United States Courts
Southern District of Texas
FILED
3/16/2026
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY<br><br>V.<br><br>EVA FALCON GARZA, AVIEL SAENZ AND LA CASA DE SUSY ADULT DAY CARE, LLC | CIVIL ACTION NO.<br><br>7:25-cv-00370 |

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES PLAINTIFF, EVANSTON INSURANCE COMPANY (hereinafter referred to as "EVANSTON") and files this, its First Amended Original Complaint for Declaratory Judgment as against Defendants AVIEL SAENZ ("SAENZ") and LA CASA DE SUSY ADULT DAY CARE, LLC ("LA CASA DE SUSY"); and for cause would respectfully show unto this Honorable Court as follows:

## I.
## JURISDICTION

1. Plaintiff EVANSTON is an insurance corporation organized and existing under the laws of the State of Illinois, and whose principal place of business is located in that state.

2. Defendant SAENZ is an individual residing and domiciled in, and a citizen of, the State of Texas. He has appeared and answered herein.

3. Defendant LA CASA DE SUSY is a limited liability company organized and existing under the laws of the State of Texas, each and all of whose members reside and are domiciled in, and are citizens of, the State of Texas. It has appeared and answered herein.

4. EVA FALCON GARZA, an individual residing and domiciled in, and a citizen of, the State of Texas, was formerly a Defendant in this cause; she has since been dismissed.

5. Jurisdiction properly lies in this Court by reason of complete diversity of citizenship within the meaning of 28 U.S.C. sec. 1332, and in that the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs. Venue properly lies in this Court in that the underlying incident which gives rise to this action occurred in Rio Grande City, Starr County, Texas; and further in that Defendant LA CASA DE SUSY has its principal place of business in that city and county.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

6. EVANSTON issued to and for the benefit of LA CASA DE SUSY that one certain surplus lines policy, no. MKLV4PSM001088, effective January 26, 2023 to January 26, 2024, a copy of which is attached hereto as Exhibit A ("the Policy"). This was a new policy for LA CASA DE SUSY, issued through EVANSTON's special medical professions line and including professional liability and general liability coverage. EVANSTON is informed and believes that LA CASA DE SUSY carries separate commercial automobile coverage through Progressive; EVANSTON does not now, and has not at any time pertinent to these events, provided automobile coverage of any kind for LA CASA DE SUSY. The Policy was in full force and effect during the period indicated.

7. The general liability coverage is an "all risk" occurrence-based form which includes liability for bodily injury and property damage, as indicated, and further features certain exclusions

from coverage. Among these exclusions is that shown at section B6, which excludes from coverage "any Claim…[b]ased upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or loading or unloading of…[a]ny Auto…owned or operated by…any Insured…"

8. LA CASA DE SUZY is an adult day care facility. SAENZ, at all relevant times, was an employee of LA CASA DE SUSY whose duties included driving a company-owned van used to transport day care clients to and from the facility. On or about October 31, 2023 GARZA, a senior citizen and client of the facility who was staying there at the time, was preparing to enter the van. SAENZ began backing up the van in the facility parking lot to pick up GARZA and, without seeing her, allegedly struck her and knocked her down; she was hospitalized with significant injuries. Again, at the time of the accident LA CASA DE SUSY was insured under two separate policies: one was an automobile policy believed to have been issued by Progressive, the other was the subject Policy.

9. GARZA filed suit against Defendants LA CASA DE SUSY and SAENZ. The causes of action pled against the former initially sounded in derivative liability for the negligence of SAENZ as well as theories of negligent entrustment and supervision. The petition was amended, however, to include a claim against LA CASA DE SUSY sounding in premises liability, alleging inadequate pedestrian safety markings and designations within the facility parking lot. A copy of the current live pleading of GARZA -- her Third Amended Petition -- is attached as Exhibit B. Progressive retained the Upton, Mickits & Heymann firm based in Corpus Christi to represent the underlying defendants, and Mr. Scott Seelhoff of that firm has answered and is defending on their behalf.

10. On July 15, 2025 counsel for GARZA, Mr. Ricardo A. Garcia, mailed to Plaintiff by and through Markel Service, Inc. the correspondence, a copy of which is attached as Exhibit C. By this correspondence GARZA, through counsel, submitted to Plaintiff a "*Stowers* demand" for the full limits of LA CASA DE SUSY's coverage under the Policy.

## III.
## CAUSE OF ACTION

11. The federal Declaratory Judgments Act, 28 U.S.C. sec. 2201 *et seq*., provides in pertinent part that, subject to certain exceptions not applicable here, "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration…"

12. When determining an insurer's duty, under Texas substantive law, to defend its insured under a policy of liability insurance, the courts follow the "eight corners" or "complaint allegation" rule, under which the duty to defend is determined by examining the four corners of the complaint and comparing same to the four corners of the insurance policy. *Century Surety Company v. Seidel,* 893 F.3d 328, 333 (5th Cir. 2018). Generally, the duty to indemnify cannot be determined until the underlying litigation is concluded, since the facts proven at trial may differ somewhat from the allegations. However, there is a well-recognized exception to this rule, in which declaratory judgment on the duty to indemnify "is proper before liability is established when (1) 'the insurer has no duty to defend' and (2) '*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*'" *Penn-America Insurance Company v. Dominguez,* 2021 WL 5578684 (E.D. Tex. 2021), at *5 (quoting *Farmers Texas County Mutual Insurance Company v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997)) (emphasis in the original). This is sometimes referred to as the "*Griffin* rule."

13. Plaintiff seeks from this Honorable Court a declaration that, by reason of the foregoing, it is under no duty to defend, and can have no duty to indemnify, LA CASA DE SUSY or SAENZ in the underlying litigation brought by GARZA.

WHEREFORE, PREMISES CONSIDERED, EVANSTON respectfully requests that Defendants be cited to appear and answer herein; that this Honorable Court, upon due notice and hearing, grant the relief requested hereinabove and enter a judgment for declaratory relief in favor of EVANSTON accordingly; that EVANSTON recover its costs of court; and for such other and further relief, at law or in equity, to which EVANSTON might show itself justly entitled.

Respectfully Submitted,

**THORNTON, BIECHLIN, REYNOLDS & GUERRA, L.C.**
418 E. Dove Avenue
McAllen, Texas 78504
Tel.: (956) 630-3080
Fax: (956) 630-0189

By: /s/ *Rafael Garcia, Jr.*
**RAFAEL GARCIA, JR.**
State Bar No.07641300
E-mail: ragarcia@thorntonfirm.com

**THORNTON, BIECHLIN, REYNOLDS & GUERRA, L.C.**
100 N.E. Loop 410, Suite 500
San Antonio, TX 78216
Telephone: 210/342-5555
Fax: 210/525-0666

By: ____________________
**VAUGHAN E. WATERS**
State Bar No. 20916700
E-mail: vwaters@thorntonfirm.com

**ATTORNEYS FOR PLAINTIFF/ COUNTER-DEFENDANT**

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument has been properly delivered via the Court's CM/ECF system to all parties who have appeared to date.

**VAUGHAN E. WATERS**

# EXHIBIT A

**A STOCK COMPANY**

Exhibit A

MARKEL®

# EVANSTON INSURANCE COMPANY

10275 West Higgins Road, Suite 750
Rosemont, IL 60018

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

| | |
|---|---|
| **Secretary** | **President** |

INTERLINE

MARKEL®

# EVANSTON INSURANCE COMPANY

## PRIVACY NOTICE

U. S. Consumer Privacy Notice Rev. 1/1/2020

| FACTS | WHAT DOES MARKEL GROUP OF COMPANIES REFERENCED BELOW (INDIVIDUALLY OR COLLECTIVELY REFERRED TO AS "WE", "US", OR "OUR") DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | In the course of Our business relationship with you, We collect information about you that is necessary to provide you with Our products and services. We treat this information as confidential and recognize the importance of protecting it. Federal and state law gives you the right to limit some but not all sharing of your personal information. Federal and state law also requires Us to tell you how We collect, share, and protect your personal information. Please read this notice carefully to understand what We do. |
| What? | The types of personal information We collect and share depend on the product or service you have with Us. This information can include:<br>• your name, mailing and email address(es), telephone number, date of birth, gender, marital or family status, identification numbers issued by government bodies or agencies (i.e.: Social Security number or FEIN, driver's license or other license number), employment, education, occupation, or assets and income from applications and other forms from you, your employer and others;<br>• your policy coverage, claims, premiums, and payment history from your dealings with Us, Our Affiliates, or others;<br>• your financial history from other insurance companies, financial organizations, or consumer reporting agencies, including but not limited to payment card numbers, bank account or other financial account numbers and account details, credit history and credit scores, assets and income and other financial information, or your medical history and records.<br>Personal information does not include:<br>• publicly-available information from government records;<br>• de-identified or aggregated consumer information.<br>When you are no longer Our customer, We continue to share your information as described in this Notice as required by law. |
| How? | All insurance companies need to share customers' personal information to run their everyday business. In the section below, We list the reasons financial companies can share their customers' personal information; the reasons We choose to share; and whether you can limit this sharing. We restrict access to your personal information to those individuals, such as Our employees and agents, who provide you with insurance products and services. We may disclose your personal information to Our Affiliates and Nonaffiliates (1) to process your transaction with Us, for instance, to determine eligibility for coverage, to process claims, or to prevent fraud, or (2) with your written authorization, or (3) otherwise as permitted by law. We do not disclose any of your personal information, as Our customer or former customer, except as described in this Notice. |

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 10 of 103

| Reasons We can share your personal information | Do We share? | Can you limit this sharing? |
|---|---|---|
| **For Our everyday business purposes and as required by law –** such as to process your transactions, maintain your account(s), respond to court orders and legal/regulatory investigations, to prevent fraud, or report to credit bureaus | Yes | No |
| **For Our marketing purposes –** to offer Our products and services to you | Yes | No |
| **For Joint Marketing with other financial companies** | Yes | No |
| **For Our Affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For Our Affiliates' everyday business purposes –** information about your creditworthiness | No | We don't share |
| **For Our Affiliates to market you** | No | We don't share |
| **For Nonaffiliates to market you** | No | We don't share |
| **Questions?** Call (888) 560-4671 or email privacy@markel.com | | |

| Who We are | |
|---|---|
| **Who is providing this Notice?** | A list of Our companies is located at the end of this Notice. |

| What We do | |
|---|---|
| **How do We protect your personal information?** | We maintain reasonable physical, electronic, and procedural safeguards to protect your personal information and to comply with applicable regulatory standards. For more information, visit www.markel.com/privacy-policy. |
| **How do We collect your personal information?** | We collect your personal information, for example, when you<br>complete an application or other form for insurance<br>perform transactions with Us, Our Affiliates, or others<br>file an insurance claim or provide account information<br>use your credit or debit card<br>We also collect your personal information from others, such as consumer reporting agencies that provide Us with information such as credit information, driving records, and claim histories. |
| **Why can't you limit all sharing of your personal information?** | Federal law gives you the right to limit only<br>sharing for Affiliates' everyday business purposes – information about your creditworthiness<br>Affiliates from using your information to market to you<br>sharing for Nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See the Other Important Information section of this Notice for more on your rights under state law. |

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 11 of 103

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• Our Affiliates include member companies of Markel Group. |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• Nonaffiliates that We can share with can include financial services companies such as insurance agencies or brokers, claims adjusters, reinsurers, and auditors, state insurance officials, law enforcement, and others as permitted by law. |
| **Joint Marketing** | A formal agreement between Nonaffiliated companies that together market financial products or services to you.<br>• Our Joint Marketing providers can include entities providing a service or product that could allow Us to provide a broader selection of insurance products to you. |

| **Other Important Information** |
|---|
| **For Residents of AZ, CT, GA, IL, ME, MA, MN, MT, NV, NJ, NC, OH, OR, and VA:** Under state law, under certain circumstances you have the right to access and request correction, amendment or deletion of personal information that We have collected from or about you. To do so, contact your agent, visit www.markel.com/privacy-policy, call (888) 560-4671, or write to Markel Corporation Privacy Office, 4521 Highwoods Parkway, Glen Allen, VA 23060.<br>We may charge a reasonable fee to cover the costs of providing this information. We will let you know what actions We take. If you do not agree with Our actions, you may send Us a statement. |
| **For Residents of CA:** You have the right to review, make corrections, or delete your recorded personal information contained in Our files. To do so, contact your agent, visit www.markel.com/privacy-policy, call (888) 560-4671, or write to Markel Corporation Privacy Office, 4521 Highwoods Parkway, Glen Allen, VA 23060. We do not and will not sell your personal information.<br>For the categories of personal information We have collected from consumers within the last 12 months, please visit: www.markel.com/privacy-policy. |
| **For Residents of MA and ME:** You may ask, in writing, for specific reason, for an adverse underwriting decision. |
| **Markel Group of Companies Providing This Notice:** City National Insurance Company, Essentia Insurance Company, Evanston Insurance Company, FirstComp Insurance Company, Independent Specialty Insurance Company, National Specialty Insurance Company, Markel Bermuda Limited, Markel American Insurance Company, Markel Global Reinsurance Company, Markel Insurance Company, Markel International Insurance Company Limited, Markel Service, Incorporated, Markel West, Inc. (d/b/a in CA as Markel West Insurance Services), Pinnacle National Insurance Company, State National Insurance Company, Inc., Superior Specialty Insurance Company, SureTec Agency Services, Inc. (d/b/a in CA as SureTec Agency Insurance Services), SureTec Indemnity Company, SureTec Insurance Company, United Specialty Insurance Company, Inc. |

# EVANSTON INSURANCE COMPANY

## TEXAS IMPORTANT NOTICE

**Have a complaint or need help?**

If you have a problem with a claim or your premium, call your insurance company or HMO first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company or HMO. If you don't, you may lose your right to appeal.

**EVANSTON INSURANCE COMPANY**

To get information or file a complaint with your insurance company or HMO:

**Call: Markel Legal Department**
**Toll-free: 1-800-507-7626**
Online: www.markel.com
Email: legalregulatory@markel.com
Mail: 10275 West Higgins Rd, Suite 750, Rosemont, IL 60018

**The Texas Department of Insurance**

To get help with an insurance question or file a complaint with the state:

Call with a question: 1-800-252-3439
File a complaint: www.tdi.texas.gov
Email: ConsumerProtection@tdi.texas.gov
Mail: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

**¿Tiene una queja o necesita ayuda?**

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros o HMO. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros o HMO. Si no lo hace, podría perder su derecho para apelar.

**EVANSTON INSURANCE COMPANY**

Para obtener información o para presentar una queja ante su compañía de seguros o HMO:

**Llame a: Markel Legal Department**
**Teléfono gratuito: 1-800-507-7626**
Online: www.markel.com
Correo electrónico: legalregulatory@markel.com
Dirección postal: 10275 West Higgins Rd, Suite 750, Rosemont, IL 60018

**El Departamento de Seguros de Texas**

Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:

Llame con sus preguntas al: 1-800-252-3439
Presente una queja en: www.tdi.texas.gov
Correo electrónico: ConsumerProtection@tdi.texas.gov
Dirección postal: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

MARKEL

# EVANSTON INSURANCE COMPANY

## IMPORTANT POLICYHOLDER NOTICE

## TEXAS SURPLUS LINES NOTICE

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code. Chapter 225, Insurance Code, requires payment of a 4.85% (percent) tax on gross premium.

MARKEL

INTERLINE

# EVANSTON INSURANCE COMPANY

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – https://www.treasury.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

MARKEL®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MOLD EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any Claim based upon, arising out of, or in any way involving **Mold** or **Mold Event**.

Solely for the purposes of this endorsement:

**Mold** means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that exist, emanate from or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage.

**Mold Event** means any actual, alleged or threat of contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal, seepage, migration, release, escape, presence, growth or reproduction of **Mold**.

All other terms and conditions remain unchanged.

MARKEL®

# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

RE: Policy Number: MKLV4PSM001088
Insured: La Casa de Susy Adult Day Care DBA: Lindo Adult Day Care
Insurer: Evanston Insurance Company

You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2015 the definition of terrorism has changed. As *defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires Evanston Insurance Company to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Nothing in this notice affects or modifies your coverage except and only to the extent specifically required by the Act.

Certified Acts of Terrorism coverage is provided for no additional premium.

MARKEL®

POLICY NUMBER: MKLV4PSM001088

# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| FORM NUMBER | FORM NAME |
|---|---|
| MJIL 1000 08 10 | Signature Page |
| MPIL 1007 01 20 | Privacy Notice |
| MPIL 1009-TX 05 20 | Texas Important Notice |
| MPIL 1010-TX 05 10 | Important Policyholder Notice - Texas Surplus Lines Notice |
| MPIL 1083 04 15 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| ZZ-44002-01 | Mold Exclusion |
| ZZ-50000 01 15 | Policyholder Disclosure of Terrorism Insurance Cov |
| MDIL 1001 08 10 | Forms Schedule |
| MDSM 5013 02 20 | Dec Spec Med Professions Insurance Policy |
| MESM 5010 02 20 | Spec Medical Professions Profes Liab Ins Cov Part |
| MESM 5012 02 20 | General Liab Ins Cov Part - Occurrence |
| MESM 5100 02 20 | Common Policy Conditions |
| EIC 4638 01 15 | Certified Acts of Terrorism Endorsement |
| EIC 832-01 10 02 | Asbestos Exclusion |
| MEIL 1200 02 20 | Service Of Suit |
| MEIL 5200-25% 07 04 | Minimum Earned Premium Endorsement |
| MEIL 5229 09 10 | Longer Duration Extended Report Period Availability |
| MEIL 5302 09 10 | Texas Endorsement |
| MESM 2015 08 15 | Amendment of Definition D.1. |
| MESM 2034 08 15 | DataBreach Coverage Parts Endorsement |
| MESM 2083 01 11 | HIPAA - Civil Monetary Penalty Endorsement |
| MESM 2094 08 15 | Amendment of Definitions G.1. |
| MESM 2115 11 16 | Markel Advantage - Good Samaritan Cov and Sup Pmts |
| MESM 2144 02 20 | Sexual Acts Liability Scheduled Deductible And Retroactive Date |
| MESM 2147 05 20 | Changes - Multiple Insureds, Claims And Claimants |
| MESM 2148 05 20 | Changes - Multiple Insureds, Claims and Occurrences |
| MESM 3015 08 15 | Exclusion - Unmanned Aircraft |
| MIL 1214 09 17 | Trade or Economic Sanctions |

MARKEL

# EVANSTON INSURANCE COMPANY

## DECLARATIONS – SPECIFIED MEDICAL PROFESSIONS INSURANCE POLICY

**Claims Made:** Under certain Coverage Parts of this policy, the coverage afforded is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to the terms herein. Refer to each Coverage Part's opening page to determine if that Coverage Part is Claims Made.

**Notice:** All Coverage Part of this policy contain provisions that reduce the limits of liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless otherwise endorsed. Please read the policy carefully.

POLICY NUMBER: MKLV4PSM001088 RENEWAL OF POLICY: NEW

1. **NAMED INSURED:** La Casa de Susy Adult Day Care DBA: Lindo Adult Day Care
2. **BUSINESS ADDRESS:** 5105 S Embassy St
   Rio Grande City, TX 78582-6657
3. **POLICY PERIOD:** From 01/26/2023 to 01/26/2024
   12:01 A.M. Standard Time at address of Insured stated above
4. **PROFESSIONAL SERVICES AND SPECIFIED PRODUCTS, GOODS, OPERATIONS OR PREMISES:**

   A. Professional Services: Adult Day Care Services

   B. Specified Products, Goods, Operations or Premises: Adult Day Care Operations ; all related premises and operations of the Insured

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| Producer Number, Name and Address |
|---|
| 213719 |
| Amwins Brokerage |
| 5910 North Central Expressway, Suite 500 |
| Dallas, TX 75206 |

**5. COVERAGE SCHEDULE:**

This policy includes only those Coverage Parts designated below by "X" as purchased. If a Coverage Part is not expressly designated as purchased, this policy does not include such Coverage Part.

| Coverage Part | Coverage Part Purchased | Coverage Part Limits of Liability | Coverage Part Deductible | Coverage Part Retroactive Date |
|---|---|---|---|---|
| **A.** Specified Medical Professions Professional Liability Insurance Coverage Part – Claims Made Coverage | Yes _X_<br>No _____ | $1,000,000 Each Claim<br>$3,000,000 Aggregate | $2,500 Each Claim | 01/26/2023 |
| **B.** Specified Medical Professions General Liability Insurance Coverage Part – Claims Made Coverage | Yes ____<br>No _X_ | Not Purchased Coverage A. Each Occurrence<br>Not Purchased Damage to Premises - Any One Premises<br>Not Purchased Coverage B. Each Person or Organization<br>Not Purchased Coverage C. Each Injured Person<br>Not Purchased Aggregate - All Coverages | Not Purchased Coverage A. Each Occurrence<br><br>Not Purchased Coverage B. Each Person or Organization | Not Purchased |
| **C.** Specified Medical Professions General Liability Insurance Coverage Part – Occurrence Coverage | Yes _X_<br>No _____ | $1,000,000 Coverage A. Each Occurrence<br>$50,000 Damage to Premises - Any One Premises<br>$1,000,000 Coverage B. Each Person or Organization<br>$5,000 Coverage C. Each Injured Person<br>$3,000,000 Aggregate - All Coverages | $2,500 Coverage A. Each Occurrence<br><br>$2,500 Coverage B. Each Person or Organization | |

6. **PREMIUM FOR POLICY PERIOD:**

Minimum Deposit [redacted]

7. **RATE:** Flat

**PREMIUM BASE:** Flat

8. **PREMIUM FOR EXTENDED REPORTING PERIOD:** 150% for 12 months; 175% for 24 months; 200% for 36 months

**9.** The Insured is not a proprietor, superintendent, executive officer, director, partner, trustee or employee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory, or any business enterprise not named in Item 1. hereinabove, except as follows:

None

**10. ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**
See MDIL 1001 08 10 attached.

**11. NOTICES:**

Notices required to be provided to the Company under this policy shall be by email, fax or mail addressed to:

**CLAIM OR DISCOVERY CLAUSE NOTICES:**

Markel Claims
P.O. Box 2009
Glen Allen, VA 23058-2009
Phone: 800-362-7535 (800) 3MARKEL
Fax: 855-662-7535 (855) 6MARKEL
Email: newclaims@markel.com

**ALL OTHER NOTICES:**

Markel Mid South Region, a division of Markel Service, Incorporated
5601 Granite Parkway, Suite 600
Plano, TX 75024
Telephone: (469) 241-3400
Fax: (866) 730-3615

**These declarations, together with the Common Policy Conditions, Coverage Part(s), any Endorsement(s) and any application(s) complete the above numbered policy.**

| Countersigned: February 22, 2023<br>(Date) | By: ______________________<br>AUTHORIZED REPRESENTATIVE |
|---|---|

MARKEL

# Markel's Designed Protection®
# Risk Management Resources Allied Health Care (Specified Medical) Professionals,

Welcome to Markel's Designed Protection® leading edge Risk Management Resources.

The following risk management resources are available exclusively to our policyholders at our website www.markelcorp.com/riskmanagement at *no additional cost*.

**HOW TO QUICKLY ACCESS RISK MANAGEMENT RESOURCES:**

Step 1. Go onto our website, www.markelcorp.com/riskmanagement.

Step 2. Select the Designed Protection services that apply to your policy, to get to the Login screen.

Step 3. Review the disclaimer, enter your current policy number and click on the button below to access. Your policy number is MKLV4PSM001088.

If you need technical assistance during the log in process, call (866) 932-2433, x113719.

**Available Risk Management Resource:**

- **Designed Protection® Risk Management Telephone Hotlines for:**

  This confidential telephone hotline is staffed by health care professional defense attorneys that are available to answer general risk management questions.

MARKEL

**INTERLINE**

POLICY NUMBER: MKLV4PSM001088

**EVANSTON INSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

THE INSURED .......... 2
INSURING AGREEMENT .......... 2
DEFINITIONS .......... 3
THE EXCLUSIONS .......... 4
TERRITORY .......... 6
LIMITS OF LIABILITY .......... 6
DEFENSE AND CLAIM EXPENSES .......... 7
CLAIMS .......... 7
EXTENDED REPORTING PERIOD .......... 8

Case 7:25-cv-00370 Document 1 Filed on 07/25/25 in TXSD Page 21 of 99



# SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to all the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

## THE INSURED

The unqualified word "Insured," either in the singular or plural, means:

**A.** The Named Insured which is herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations;

**B.** Any past or current principal, partner, officer, director, Employee or Volunteer Worker of the Named Insured solely while acting on behalf of the Named Insured and within the scope of their duties as such; provided, however, this insurance shall not apply to any Claim made against any Insured who is a physician, surgeon, dentist or podiatrist arising out of the rendering of or failure to render Professional Services in his/her capacity as a physician, surgeon, dentist or podiatrist;

**C.** If the Named Insured is a limited liability company, any past or current manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of such limited liability company and any past or current member thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as a member of such limited liability company;

**D.** Any medical director solely while acting on behalf of the Named Insured and solely within the scope of his/her Administrative Duties as such; provided, however, this insurance shall not apply to any Claim made against any medical director who is a physician, surgeon, dentist or podiatrist arising out of the rendering of or failure to render Professional Services in his/her capacity as a physician, surgeon, dentist or podiatrist;

**E.** Any student enrolled in a training program in connection with the Named Insured's Professional Services solely while acting within the scope of his/her duties as such and at the Named Insured's direction;

**F.** The heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy of such Insured, but only for each such Insured's liability as is otherwise covered herein.

## INSURING AGREEMENT

**A.** **Professional Liability and Claims Made Clause:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS A., Claim Reporting Provision, for Professional Personal Injury:

**1.** By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by an Insured; or

**2.** By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by a natural person, who is not and shall not be an Insured hereunder, and through whose acts the Insured controls the provider-patient relationship as of the time of such act, error or omission;

provided:

**a.** The act, error or omission happens during the Policy Period or on or after the Retroactive Date stated in the Declarations and before the end of the Policy Period; and

**b.** Prior to the effective date of this policy the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may lead a reasonable person in the Insured's position to conclude that a Claim was likely.

## DEFINITIONS

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 24 of 103



A. **Administrative Duties** means establishing medical protocol, serving on a standards review, peer review, or credentialing committee or similar professional board or committee of the Named Insured; provided, however, Administrative Duties shall not include:

1. Rendering or failure to render Professional Services by a medical director which results in Professional Personal Injury; or
2. Rendering or failure to render specific medical direction for a natural person receiving Professional Services via telecommunications to other healthcare professionals.

B. **Claim** means the Insured's receipt of:

1. A written demand for Damages or Professional Services; or
2. The service of suit or institution of arbitration proceedings against the Insured seeking Damages.

C. **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include:

1. Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or
2. Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

D. **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

1. Punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages;
2. Taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law;
3. Sanctions;
4. Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed;
5. The return, withdrawal, reduction or restitution or payment of fees, profits or charges for services or consideration and/or any expenses paid to the Insured; or
6. The cost of complying with an award or order for declaratory, equitable or injunctive relief or remedy.

E. **Employee** means any natural person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes a Leased Worker but does not include any Temporary Worker or independent contractor.

F. **Leased Worker** means any natural person leased to the Named Insured by a labor leasing organization, under an agreement between the Named Insured and the labor leasing organization, to perform duties related to the conduct of the Named Insured's business and which are at the Insured's direction. Leased Worker does not include a Temporary Worker.

G. **Policy Period** means the period form the inception date of this policy to the policy expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

H. **Professional Personal Injury** means:

1. Any bodily injury, mental injury, sickness, disease, emotional distress or mental anguish, including death resulting therefrom of any natural person receiving Professional Services arising out of an act, error or omission in Professional Services rendered or that should have been rendered;
2. False arrest, detention or imprisonment, or malicious prosecution of any natural person receiving Professional Services, except when inflicted by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed; or

3. The publication or utterance of a libel or slander concerning a natural person receiving Professional Services or a publication or an utterance in violation of such person's right to professional confidence, except when published or uttered by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed.

I. **Professional Services** means those services stated in Item 4. of the Declarations.

J. **Temporary Worker** means any natural person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

K. **Volunteer Worker** means any natural person who is not an Employee of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

## THE EXCLUSIONS

This Coverage Part does not apply to:

A. Any act, error or omission in Professional Services rendered or that should have been rendered or Professional Personal Injury committed in violation of any law or ordinance;

B. Any Claim based upon or arising out of any dishonest, fraudulent, criminal, malicious, knowingly wrongful, deliberate, or intentional acts, errors or omissions committed by or at the direction of the Insured;

C. Any administrative or judicial hearings pertaining to Medicare/Medicaid fraud or any other hearing initiated against an Insured by the United States Department of Health & Human Services (HHS) or by an utilization or quality review organization under contract with HHS; provided, however, this exclusion shall not apply to HHS proceedings that allege the violation of the Emergency Medical Treatment and Labor Act;

D. Any Claim based upon or arising out of the invasion, infringement or interference of the right of privacy arising from the use, visitation of, posting or browsing of any blog, bulletin board services, chat room, web site or other internet form or URL;

E. Any Claim based upon or arising out of the gathering, use or dissemination of personal information in any form including but not limited to any violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA);

F. Any Claim based upon or arising out of any unlawful discrimination by any Insured;

G. Any Claim based upon or arising out of any act, error or omission committed or alleged to have been committed by the Insured that in any manner relates to or arises out of the actual, alleged or threatened discharge, dispersal, release, escape or existence of pollutants, hazardous substances, toxic substances or substances which in any manner impair or allegedly impair the environment or which result in bodily injury or property damage;

H. Any liability arising out of the Insured's activities in his/her capacity as proprietor, superintendent, executive officer, director, partner, trustee or employee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory or business enterprise, or any governmental body, sub-division or agency not named as an Insured under this policy unless such activities are disclosed in the application and covered by endorsement to this policy;

I. Any Claim based upon or arising out of any liability of others assumed by the Insured under any contract or agreement; unless such liability would have attached to the Insured even in the absence of the contract or agreement;

J. Any Claim arising out of general liability, or goods or products manufactured, sold, handled or distributed by the Insured or by others trading under an Insured's name;

K. Any liability arising out of the ownership, maintenance, operation, use, loading or unloading of any vehicle, watercraft or aircraft;

L. Any Claim based upon or arising out of any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct of a sexual nature; provided, however, the Company agrees to defend the Named Insured for such a Claim for the strictly vicarious liability of the Named Insured, unless a manager, supervisor, officer, director, trustee or partner of the Named Insured:

1. Knew or should have known about the sexual act allegedly committed by the Insured but failed to prevent or stop it; or
2. Knew or should have known that the Insured who allegedly committed the sexual act had a prior history of such sexual misconduct act;

The Company shall not pay Damages on behalf of the Named Insured for such a Claim.

**M.** Injury arising out of the performance of a criminal act or caused by an Insured while under the influence of intoxicants or narcotics;

**N.** Any Claim based upon, arising out of, or in any way involving:

1. The employment relationship or the nature, terms or conditions of employment or any workplace tort brought by or on behalf of any Employee, former Employee, prospective employee, independent contractor or consultant of the Insured or to Professional Personal Injury to, or sickness, disease or death of any Employee of the Insured arising out of, and in the course of his/her employment by the Insured;
2. Any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law; or
3. Any actual or alleged violation of the Employee Retirement Income Security Act of 1974, or any other similar federal, state or common law or any amendments thereto;

**O.** Any Claim based upon or arising out of:

1. The dispensing of or the use of any drug or device whose approval for use was withdrawn by the U.S. Food and Drug Administration (FDA) at the time such drug or device was used or dispensed;
2. Use, administration or prescription of any drug, pharmaceutical, medical device or procedure which has not received final approval by the FDA for treatment of humans or which is not used, administered or prescribed as part of an FDA approved study;

**P.** Any Claim based upon or arising out of a warranty or guarantee of cure or success of treatment which is alleged to have arisen out of an advertisement;

**Q.** Any Claim based upon or arising out of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C., Section 1961, et seq.;

**R.** Any Claim based upon or arising out of the disarming or disabling of any alarms or monitoring devices of medical equipment;

**S.** Any Claim based upon or arising out of:

1. The failure to maintain medical records in their original condition;
2. Creating, altering, amending or modifying medical records;
3. Improperly disposing of medical records;
4. The failure to maintain the privacy and security of medical records or private personal information;

**T.** Any Claim made against the Insured:

1. By any person or organization or its subrogee, assignee, contractor, subcontractor, or parent company, subsidiary, division or affiliated company which was or is operated, managed, owned or otherwise controlled, whether directly or indirectly, or in whole or in part, by an Insured or parent company or any subsidiary, division or affiliated organization; or
2. By or on behalf of any Insured under this policy; provided, however, this exclusion shall not apply to any Claim made against any Insured arising out of the rendering of or failure to render Professional Services by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, if such Insured is a natural person receiving Professional Services;

**U.** Any Claim based upon or arising out of:

1. Any allegations of price fixing, unfair competition or trade practices;
2. A dispute over fees, income or revenue;

3. The inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship; or
4. Violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restraint of trade, business or profession;

**V.** Any Claim based upon or arising out of any violation of:

1. The Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;
2. The CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;
3. The Fair Credit Reporting Act (FCRA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation, including the Fair and Accurate Credit Transactions Act of 2003 (FACTA); or
4. Any other statute, law, rule, ordinance or regulation that addresses, prohibits or limits the dissemination, sending, transmitting, communication, printing, disposal, collection, recording or distribution of information or other material;

**W.** Any Claim based upon or arising out:

1. Any disciplinary proceeding against the Insured conducted by any regulatory body, disciplinary board or governmental agency; or
2. Any federal or state inquiry or review involving an Insured's professional licensure; or

**X.** Any Claim brought under any other Coverage Part of this policy.

## TERRITORY

The insurance afforded applies worldwide, provided the Claim is made in the United States of America, its territories or possessions or Puerto Rico.

## LIMITS OF LIABILITY

**A.** **Limit of Liability-Each Claim:** For Professional Liability, the total liability of the Company for the combined total of Damages and Claim Expenses for each Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Claim.

**B.** **Limit of Liability-Coverage Part Aggregate:** Subject to the above Section LIMITS OF LIABILITY A., for Professional Liability, the total liability of the Company shall not exceed the Coverage Part Aggregate Limit of Liability as stated in the Declarations for all Damages and Claim Expenses arising out of all Claims first made against the Insured during the Policy Period and the Extended Reporting Period, if exercised.

**C.** **Limit of Liability-Reduction for Refusal to Settle:** The Company shall not settle any Claim without the consent of the Insured. If, however, the Insured is a partnership, professional association, professional corporation or limited liability company, the written consent of an Insured who was formerly but is no longer a member of the partnership, professional association or limited liability company or director, officer, stockholder or employee of a professional corporation will not be required, provided the written consent of the corporate directors, officers, stockholders or employees of a professional corporation, or their duly appointed representatives, has been obtained. If, however, the Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company's liability for the Claim shall not exceed the amount for which the Claim could have been so settled including Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the above Limits of Liability A. and B.

**D.** **Deductible:** For Professional Liability, the Deductible amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Deductible amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

**E. Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in the Declarations. More than one Claim arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single Claim. All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such act, error or omission is made, or with regard to written notice given to and accepted by the Company pursuant to Section CLAIMS B., Discovery Clause, on the date within the Policy Period on which such written notice of potential Claim is first received by the Company.

## DEFENSE AND CLAIM EXPENSES

**A. Defense and Investigation of Claims:** The Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1. Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the Professional Liability Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the Professional Liability Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Named Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   a. Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

   b. Providing any other reasonable information requested;

   c. Providing fully itemized billing on a periodic basis; and

   d. Cooperating with the Company and the Insured in resolving any discrepancies;

   and the fees and costs incurred by such defense counsel, including those fees and costs generated by defense counsel's cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the Professional Liability Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

## CLAIMS

**A. Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Corporation, P.O. Box 2009, Glen Allen, VA 23058-2009, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

**B. Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific act, error or omission in Professional Services which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured may provide written notice as stated in the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such act, error or omission in Professional Services shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1. The description of the specific act, error or omission in Professional Services;
2. The date on which such act, error or omission in Professional Services took place;
3. The injury or damage which has or may result from such act, error or omission in Professional Services;
4. The identity of any injured persons; and
5. The circumstances by which the Insured first became aware of such act, error or omission in Professional Services.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific act, error or omission in Professional Services which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, the Company at its sole option, may investigate such specific act, error or omission in Professional Services. Such matter shall be subject to all terms, conditions and provisions in this Coverage Part as applicable to a Claim.

## EXTENDED REPORTING PERIOD

**A.** The Named Insured's right to exercise the Extended Reporting Period under this Coverage Part shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements in the policy for which an Extended Reporting Period is available.

**B.** If the Named Insured nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions Section A., Cancellation, or if the Company nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions A., Cancellation, for reasons other than nonpayment of premium, Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at the percentage stated in the Declarations of the adjusted annual premium for the Policy Period, subject to adjustment as per Common Policy Conditions K., Premium and Audit, but in no event less than the percentage stated in the Declarations of the annual minimum premium for the policy, to extend the coverage granted under this Coverage Part, for the period of months stated in the Declarations, as elected by the Named Insured to apply to Claims first made against the Insured during the period of months as elected and reported to the Company pursuant to, Section CLAIMS A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any act, error or omission in Professional Services which happened on or after the applicable Retroactive Date stated in the Declarations and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this Coverage Part.

This extended period of coverage months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this Coverage Part is immediately succeeded by claims made insurance coverage on which the Professional Liability Retroactive Date is the same as or earlier than that stated in the Declarations of this policy, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or deductible and/or limit of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

This Extended Reporting Period shall not be available when any Insured's license or right to practice his/her profession is revoked, suspended or surrendered.

**C.** As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:

1. All Deductibles when due;
2. All premiums due for the Policy Period; and
3. All premium and deductible(s), if any, due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement.

The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or

nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written request and payment of additional premium for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

**D.** The Named Insured shall pay any additional premium that may be due as a result of audit, promptly when due.

**E.** In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

**F.** The Extended Reporting Period shall not in any way increase the Limits of Liability stated in the Declarations.

Case 7:25-cv-00370 Document 1 Filed on 07/25/25 in TXSD Page 29 of 99

MARKEL®

**INTERLINE**

# EVANSTON INSURANCE COMPANY

## SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

THIS IS AN OCCURRENCE COVERAGE PART. PLEASE READ IT CAREFULLY.

THE INSURED ........ 2
INSURING AGREEMENTS ........ 3
DEFINITIONS ........ 4
THE EXCLUSIONS ........ 8
TERRITORY ........ 13
LIMITS OF LIABILITY ........ 13
DEFENSE, SETTLEMENTS AND CLAIM EXPENSES ........ 13
CLAIM REPORTING PROVISION ........ 14
OTHER CONDITIONS ........ 15

 Includes copyrighted material of Insurance Services Office, Inc. with its permission. 

# SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

THIS IS AN OCCURRENCE COVERAGE PART. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to all the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

## THE INSURED

The unqualified word "Insured," either in the singular or plural, means:

**A.** The Named Insured which is defined herein as the person(s) or organization(s) stated in Item 1. of the Declarations;

**B.** If the Named Insured is an individual, the person so stated and his/her lawful spouse, but only with respect to his/her conduct of business as a sole proprietor;

**C.** If the Named Insured is a partnership or joint venture, the partnership or joint venture so stated and any partner or member thereof and his/her lawful spouse, but only with respect to the conduct of the partnership or joint venture business;

**D.** If the Named Insured is a limited liability company, the limited liability company so stated, any manager thereof, but only with respect to their duties as manager of the limited liability company and any member thereof, but only with respect to the conduct of the business of the limited liability company;

**E.** If the Named Insured is other than an individual, partnership, joint venture or limited liability company, the organization so stated and any executive officer or director thereof, but only with respect to his/her duties as an executive officer or director of such organization;

**F.** Any person other than an Employee, or any organization while acting as real estate manager for the Named Insured;

**G.** Any Employee, other than either the executive officers of the Named Insured if the Named Insured is an organization other than a partnership, joint venture or limited liability company or any manager of the Named Insured if the Named Insured is a limited liability company, solely while acting on behalf of the Named Insured and within the scope of their duties as such;

provided, however, that coverage afforded to such Employee does not apply to:

**1.** Bodily Injury or Personal and Advertising Injury:

**a.** To the Named Insured, the Named Insured's partners, the Named Insured's members or to a co-Employee while in the course of their employment or performing duties related to the conduct of the Named Insured's business;

**b.** To the spouse, child, parent, brother or sister of that co-Employee as a consequence of subparagraph 1.a. hereinabove;

**c.** For which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs 1.a. and b. hereinabove; or

**d.** Arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged in the business or occupation of providing professional health care services;

**2.** Property Damage to property:

**a.** Owned, occupied or used by; or

**b.** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

the Named Insured or any Volunteer Worker or Employee or any partner or member of the Named Insured;

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 33 of 103



**H.** Any organization which is acquired or formed by the Named Insured, other than a partnership, joint venture or limited liability company, and over which the Named Insured maintains majority ownership, will qualify as a Named Insured if there is no other similar insurance available to that organization;

provided, however, that:

1. Coverage under this provision is afforded only for ninety (90) days from the date the Named Insured acquires or forms such organization, or the end of the Policy Period, whichever is earlier;
2. Coverage A. does not apply to Bodily Injury or Property Damage that occurred before the Named Insured acquired or formed the organization; and
3. Coverage B. does not apply to Personal and Advertising Injury arising out of an offense committed before the Named Insured acquired or formed the organization;

**I.** Any supervisor, administrator, medical director, department head or head of medical staff solely while acting on behalf of the Named Insured and solely within the scope of their duties as such;

**J.** Any student enrolled in a training program in connection with the Named Insured's Professional Services solely while acting within the scope of his/her duties as such and at the Named Insured's direction;

**K.** Any Volunteer Worker of the Named Insured, other than a healthcare provider, solely while acting on behalf of the Named Insured and within the scope of his/her duties as such and at the direction of the Named Insured;

**L.** The heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy of such Insured, but only for such Insured's liability as is otherwise covered herein;

**M.** Any member of a board or committee of the Named Insured, solely for conduct arising out of their duties as a board or committee member and any person who executes a decision or directive from a board or committee of the Named Insured solely while in the course and scope of executing such order or directive.

This Coverage Part does not apply to any Bodily Injury, Property Damage, Occurrence, Personal and Advertising Injury or offense arising out of the conduct of any partnership, joint venture or limited liability company which is not stated in the Declarations as a Named Insured.

## INSURING AGREEMENTS

**A.** **Coverage A. - Bodily Injury and Property Damage Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Bodily Injury or Property Damage caused by an Occurrence;

provided:

1. The entirety of the Bodily Injury or Property Damage and Occurrence happens during the Policy Period;
2. Such Bodily Injury or Property Damage and Occurrence arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations;
3. Prior to the effective date of this Coverage Part the Insured had no knowledge such Bodily Injury, Property Damage or Occurrence had occurred in whole or in part, and if any Insured knew prior to the Policy Period that the Bodily Injury, Property Damage or Occurrence had occurred, then any continuation, change or resumption of such Bodily Injury, Property Damage or Occurrence during or after the Policy Period will be deemed to have been known prior to the Policy Period;
4. Such Bodily Injury or Property Damage, which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by any Insured, includes any continuation, change or resumption of that Bodily Injury or Property Damage after the end of the Policy Period; and
5. Such Bodily Injury, Property Damage or Occurrence will be deemed to have been known to have occurred at the earliest of any Insured:
   a. Reporting all, or any part, of such Bodily Injury, Property Damage or Occurrence to the Company or any other insurer;
   b. Receiving of a Claim because of such Bodily Injury, Property Damage or Occurrence; or


Includes copyrighted material of Insurance Services Office, Inc. with its permission.

c. Becoming aware by any other means that such Bodily Injury, Property Damage or Occurrence has occurred or has begun to occur.

**B. Coverage B. - Personal and Advertising Injury Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Personal and Advertising Injury caused by an offense;

provided:

1. The entirety of the Personal and Advertising Injury and offense happens during the Policy Period; and
2. Such Personal and Advertising Injury and offense arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations.

**C. Coverage C. – Medical Payments**

The Company will pay medical expenses for Bodily Injury caused by an accident:

1. On premises the Named Insured owns or rents;
2. On ways next to premises the Named Insured owns or rents; or
3. Because of the Named Insured's operations;

provided that:

a. The accident takes place in the United States of America, its territories or possessions or Puerto Rico and during the Policy Period;

b. The expenses are incurred and reported to the Company within one (1) year of the date of the accident; and

c. The injured person submits to examination, at the Company's expense, by physicians of the Company's choice as often as the Company reasonably requires.

The Company will make these payments regardless of fault. The Company will pay reasonable expenses for:

(i) First aid administered at the time of an accident;

(ii) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(iii) Necessary ambulance, hospital, professional nursing and funeral services.

The Named Insured shall report such expenses to Markel Claims, P.O. Box 2009, Glen Allen, VA 23058-2009, on behalf of the Company.

## DEFINITIONS

**A. Advertisement** means a commercial communication, including communications that are published material placed on the Internet or on similar electronic means of communication, that is broadcast or published about the Named Insured's Specified Products, Goods or Operations stated in the Declarations for the purpose of promoting the sale or use of such Specified Products, Goods or Operations; provided, however, only that part of a website that is about the Named Insured's Specified Products, Goods or Operations stated in the Declarations for the purposes of promoting such Specified Products, Goods or Operations is considered an Advertisement.

**B. Aircraft Products** means any aircraft whether or not heavier than air, including spacecraft and missiles, and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of Aircraft Products.

**C. Auto** means:

1. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; provided, however, it does not include Mobile Equipment; or

 Includes copyrighted material of Insurance Services Office, Inc. with its permission. 

2. Any other land motor vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged;

provided, however, Auto does not include Mobile Equipment.

D. **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

E. **Claim** means a written notice received by the Insured of:

1. An intention to hold the Insured responsible for:

   a. A Bodily Injury;

   b. A Property Damage;

   c. A Personal and Advertising Injury;

   d. An Occurrence; or

   e. An offense resulting in a Personal and Advertising Injury;

   involving this Coverage Part; or

2. The service of suit or institution of arbitration proceedings against the Insured.

F. **Claim Expenses** means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include:

1. Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

2. Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

Solely for the purposes of liability assumed in an Insured Contract, Claim Expenses incurred by or for a party other than an Insured are deemed to be Damages because of Bodily Injury or Property Damage; provided, however, that:

a. Liability to such party for, or the cost of, that party's defense has also been assumed in the same Insured Contract; and

b. Such Claim Expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which Damages to which this insurance applies are alleged.

G. **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

1. Punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages;

2. Taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law;

3. Sanctions;

4. Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed; or

5. The return, withdrawal, reduction or restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured for services, products or goods.

6. The cost of complying with an award or order for declaratory, equitable or injunctive relief or remedy.

H. **Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.


Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 36 of 103



**I.** **Employee** means any natural person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes a Leased Worker but does not include any Temporary Worker or independent contractor.

**J.** **Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft because of the existence of or alleged existence of a defect, fault or condition in any Aircraft Products.

**K.** **Insured Contract** means:

1. A contract for lease of premises; provided, however, that the portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the Named Insured or temporarily occupied by the Named Insured with the permission of the owner shall not be an Insured Contract;
2. Any easement or license, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;
3. An obligation, as required by municipal ordinance, to indemnify a municipality, except in connection with work for the municipality;
4. A sidetrack agreement;
5. An elevator maintenance agreement; or
6. That part of any other contract or agreement pertaining to the Named Insured's business under which the Named Insured assumes the tort liability of another party to pay for Bodily Injury or Property Damage to a third party, provided such Bodily Injury or Property Damages is caused, in whole or in part, by the Insured or by any person or organization acting on behalf of the Named Insured; provided, however, Insured Contract shall not include that part of any contract or agreement:
   a. That indemnifies a railroad for Bodily Injury or Property Damage arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;
   b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
      **(i)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or designs or specifications; or
      **(ii)** Supervision, inspection, failure to supervise or inspect architectural, engineering or surveying services; or
   c. Under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render services of a professional nature, including those listed in subparagraph 6.b. hereinabove or any supervision, inspection, failure to supervise or inspect architectural, engineering or survey services.

**L.** **Leased Worker** means a person leased to the Named Insured by a labor leasing organization, under an agreement between the Named Insured and the labor leasing organization, to perform duties related to the conduct of the Named Insured's business and which are at the Insured's direction. Leased Worker does not include a Temporary Worker.

**M.** **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
2. Vehicles maintained for use solely on or next to premises the Named Insured owns or rents;
3. Vehicles that travel on crawler treads;
4. Vehicles, whether self-propelled or not, on which are permanently mounted:
   a. Power cranes, shovels, loaders, diggers, or drills; or

 Includes copyrighted material of Insurance Services Office, Inc. with its permission. 

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in 1., 2., 3., or 4. herein above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers;

**6.** Vehicles not described in 1., 2., 3., or 4. herein above maintained primarily for purposes other than the transportation of persons or cargo; provided, however, that self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment but will be considered Autos:

**a.** Equipment designed primarily for:

**(i)** Snow removal;

**(ii)** Road maintenance, but not construction or resurfacing; or

**(iii)** Street cleaning;.

**b.** Cherry pickers and similar devices mounted on Auto or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment;

provided, however, Mobile Equipment does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered Autos.

**N.** **Named Insured's Products or Goods** means Specified Products or Goods stated in the Declarations, other than real property, that are manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured's name, including any container thereof, other than a vehicle.

Named Insured's Products or Goods includes:

**1.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the Named Insured's Products or Goods; and

**2.** The providing or failure to provide warnings or instructions.

Named Insured's Products or Goods does not include a vending machine or any other property rented to or located for use of others but not sold.

**O.** **Named Insured's Work** means:

**1.** Work or operations performed by or on behalf of the Named Insured for those Specified Operations stated in the Declarations; and

**2.** Materials, parts or equipment furnished in connection such work or operations.

Named Insured's Work includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the Named Insured's Work; and

**b.** The providing or failure to provide warnings or instructions.

**P.** **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Q.** **Personal and Advertising Injury** means injury, including consequential Bodily Injury, caused by one or more of the following offenses:

**1.** False arrest, detention or imprisonment;

 Includes copyrighted material of Insurance Services Office, Inc. with its permission. 

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

4. Oral or written publication, in the course of the Named Insured's Advertisement, of material that slanders or libels a person or organization or disparages a person's or organization's products, goods, operations or services;

5. Oral or written publication, in the course of the Named Insured's Advertisement, of material that violates a person's right of privacy;

6. The use of another's advertising idea in the course of the Named Insured's Advertisement; or

7. Infringing upon another's copyright, trade dress or slogan in the course of the Named Insured's Advertisement.

R. **Policy Period** means the period from the inception date of this policy to the policy expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

S. **Pollutants** means any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electric, or magnetic irritants or contaminants, including, smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals, or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

T. **Products-Completed Operations Hazard** includes Bodily Injury and Property Damage occurring away from premises owned by or rented to the Named Insured and arising out of the Named Insured's Products or Goods or the Named Insured's Work.

1. Products-Completed Operations Hazard does not include:

   a. Products or goods that are still in the Named Insured's physical possession; or

   b. Work that has not yet been completed or abandoned.

2. The Named Insured's Work shall be deemed completed at the earliest of the following times:

   a. When all of the work called for under a contract with the Named Insured has been completed;

   b. When all of the work to be performed at the job site has been completed if the contract with the Named Insured calls for work at more than one job site; or

   c. When the portion of the work out of which the Bodily Injury, Property Damage or Occurrence arises has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

3. Work or operations which may require service, maintenance, correction, repair or replacement, but which are otherwise complete, shall be deemed completed.

4. The Products-Completed Operations Hazard does not include any Bodily Injury, Property Damage or Occurrence arising out of:

   a. The transportation of property, unless the Bodily Injury, Property Damage or Occurrence arises out of a condition in or on a vehicle not owned or operated by the Named Insured created by the loading or unloading thereof; or

   b. The existence of tools, uninstalled equipment or abandoned or unused materials.

U. **Professional Services** means those services stated in Item 4. of the Declarations.

V. **Property Damage** means:

1. Physical injury to or destruction of tangible property, including consequential loss of use thereof; or

2. Loss of use of tangible property which has not been physically injured or destroyed;

provided, however, any such loss of use is caused by an Occurrence;

Tangible property shall not include Electronic Data.

 Includes copyrighted material of Insurance Services Office, Inc. with its permission. 

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 39 of 103



**W.** **Temporary Worker** means any person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

**X.** **Volunteer Worker** means any person who is not an Employee of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

## THE EXCLUSIONS

**A.** With respect to all Coverages, this Coverage Part does not apply to any Claim:

**1.** Based upon or arising out of:

**a.** The actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants; provided, however, this subparagraph shall not apply with respect to:

**(1)** The Products-Completed Operations Hazard;

**(2)** Damage, arising out of heat, smoke or fumes from hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any Insured;

**b.** Bodily Injury or Property Damage arising out of the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants:

**(1)** At or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

**(2)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom the Insured may be legally responsible; or

**c.** Any demand, request, direction, order or statutory or regulatory requirement to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or in any way respond to or assess the effects of Pollutants or to pay for or contribute to the costs of undertaking such actions; provided, however, this subparagraph shall not apply to liability for Damages because of Property Damage that the Insured would have in the absence of such demand, request, direction, order or statutory or regulatory requirement;

**2.** Based upon, arising out of, or in any way involving an act, error or omission in the performance of services of a professional nature rendered or that should have been rendered by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible;

**3.** Based upon or arising out of the Insured's activities as a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto;

**4.** Based upon or arising out of any unlawful discrimination by any Insured;

**5.** Based upon or arising out of any Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate Electronic Data;

**6.** Based upon or arising out of any violation of:

**a.** The Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;

**b.** The CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;

**c.** The Fair Credit Reporting Act (FCRA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation, including the Fair and Accurate Credit Transactions Act of 2003 (FACTA); or

**d.** Any other federal, state or local statute, law, rule, ordinance or regulation that addresses, prohibits or limits the dissemination, sending, transmitting, communicating, printing, disposal, collecting, recording or distribution of information or other material;

**7.** Based upon or arising out of Bodily Injury or Property Damage arising directly or indirectly out of:

Case 7:25-cv-00370 Document 1 Filed on 07/25/25 in TXSD Page 38 of 99



a. War, whether or not declared;

b. Civil war, insurrection, rebellion, revolution or usurped power or action taken by governmental authority in hindering or defending against any of the foregoing; or

c. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

8. Based upon or arising out of the termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, refusal to employ, or other practices or policies related to employment or professional privileges; or

9. Brought under any other Coverage Part of this policy.

Exclusions A.1. and A.7. shall not apply to Property Damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability – Fire Damage.

**B.** With respect to Coverage A., this Coverage Part does not apply to any Claim:

1. Based upon or arising out of Bodily Injury or Property Damage expected or intended from the standpoint of the Insured; provided, however, this exclusion does not apply to Bodily Injury resulting from the use of reasonable force to protect persons or property;

2. Based upon or arising out of Bodily Injury or Property Damage for which the Insured is obligated to pay Damages because of the assumption of liability in any contract or agreement; provided, however, this exclusion shall not apply to liability for damages:

   a. That the Insured would have in the absence of the contract or agreement; or

   b. Assumed in a contract or agreement that is an Insured Contract; provided, the Bodily Injury and Property Damage occurs subsequent to the execution of the Insured Contract;

3. Based upon or arising out of loss of use of tangible property which has not been physically injured or destroyed resulting from:

   a. A delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement; or

   b. A defect, deficiency, inadequacy or dangerous condition in the Named Insured's Products or Goods or the Named Insured's Work;

   provided, however, this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's Products or Goods or the Named Insured's Work after such products, goods or work have been put to use by any person or organization other than an Insured, provided such products, goods or work are included in the Specified Products, Goods or Operations stated in the Declarations;

4. Based upon or arising out of Property Damage to:

   a. The Named Insured's Products or Goods; or

   b. The Named Insured's Work included in the Products-Completed Operations Hazard, arising out of it or any part of it, or for the cost of inspecting, repairing or replacing any defective or allegedly defective product or work or part thereof or for loss of use of any defective or allegedly defective product or work;

5. For Damages for any loss, cost or expense incurred by the Named Insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Named Insured's Products or Goods or the Named Insured's Work or of any property of which such products, goods or work form a part, if such products, goods, work or property are withdrawn from the market or from use because of any known or suspected defect, deficiency, inadequacy or dangerous condition therein;

6. Based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

   a. Any Auto, aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

 Includes copyrighted material of Insurance Services Office, Inc. with its permission. 

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 41 of 103



**b.** Any other Auto, aircraft or watercraft operated by any person in the course of their employment or activities on behalf of the Named Insured;

provided, however, this exclusion shall not apply to:

**(1)** The parking of an Auto on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Auto is not owned by or rented or loaned to any Insured;

**(2)** A watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

**(3)** A watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

**7.** Based upon or arising out of Bodily Injury or Property Damage arising out of:

**a.** The ownership, maintenance, operation, use, loading or unloading of any Mobile Equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for such contest or activity; or

**b.** The operation or use of any snowmobile, moped or motorized bicycle, or trailer designed for use therewith;

**8.** Based upon or arising out of Bodily Injury or Property Damage arising out of the transportation of Mobile Equipment by an Auto owned or operated by or rented or loaned to any Insured;

**9.** Based upon or arising out of Property Damage to:

**a.** Property owned, occupied or rented to the Insured;

**b.** Property loaned to the Insured;

**c.** Personal property in the care, custody or control of the Insured;

**d.** That particular part of any property,

**(1)** Upon which operations are being performed by or on behalf of the Named Insured if the Property Damage arises out of those operations; or

**(2)** The restoration, repair or replacement of which has been made or is necessary because of faulty workmanship thereon by or on behalf of the Insured; provided, however, this subparagraph shall not apply with respect to Property Damage included in the Products-Completed Operations Hazard;

**e.** Premises that the Named Insured sells, gives away or abandons, if the Property Damage arises out of any part of those premises; provided, however, this subparagraph shall not apply if the premises are included in the Products-Completed Operations Hazard and were never occupied, rented or held for rental by the Named Insured; or

**f.** To work performed by the Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith with respect to the Products-Completed Operations Hazard;

provided, however, Items b., c., and d. of this exclusion shall not apply with respect to liability under a written sidetrack agreement;

**10.** Based upon or arising out of any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

**11.** Based upon or arising out of Bodily Injury to any employee of the Insured arising out of and in the course of employment by the Insured or performing duties related to conduct of the Insured's business or any such Claim brought by or on behalf of the spouse, child, parent, brother, sister or partner of the employee;

this exclusion shall apply:

**a.** Whether the Insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share damages with or repay someone else who must pay damages because of injury;

provided, however, that this exclusion shall not apply with respect to liability assumed by the Insured under an Insured Contract;

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 42 of 103



**12.** Based upon or arising out of Bodily Injury or Property Damage for which the Insured may be held liable because of:

**a.** Causing or contributing to the intoxication of any person;

**b.** The furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

**c.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

provided, however, this exclusion shall apply only if the Named Insured:

**(1)** Manufactures or distributes alcoholic beverages;

**(2)** Serves or furnishes alcoholic beverages for a charge whether or not such activity requires a license, is for financial gain or livelihood; or

**(3)** Serves or furnishes alcoholic beverages without a charge if a license is required for such activity;

**13.** Based upon or arising out of Aircraft Products including consequential loss of use thereof resulting from Grounding;

**14.** Based upon or arising out of the Named Insured's Products or Goods or the Named Insured's Work in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof;

**15.** For Bodily Injury arising out of Personal and Advertising Injury; or

**16.** Based upon or arising out of Bodily Injury sustained by any patient, person or resident of a facility receiving services of a professional nature or any such Claim brought by or on behalf of the spouse, child, parent, grandparent, brother, sister or partner of such patient, person or resident of a facility.

Exclusions B.3. through B.12. shall not apply to Property Damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability – Fire Damage.

**C.** With respect to Coverage B., this Coverage Part does not apply to any Claim:

**1.** Based upon or arising out of Personal and Advertising Injury caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal and Advertising Injury;

**2.** Based upon or arising out of Personal and Advertising Injury arising out of the oral or written publication, in any manner, of material, if done by or at the direction of the Insured with the knowledge of its falsity;

**3.** Based upon or arising out of Personal and Adverting Injury arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the Policy Period;

**4.** Based upon or arising out of Personal and Advertising Injury arising out of any criminal act committed by or at the direction of the Insured;

**5.** Based upon or arising out of Personal and Advertising Injury arising out of a mistake in advertised price or incorrect description of any product, good or operation;

**6.** Based upon or arising out of any liability assumed by the Insured in a contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of the contract or agreement;

**7.** Based upon or arising out of Personal and Advertising Injury arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right; provided, however, this exclusion shall not apply to Infringing upon another's copyright, trade dress or slogan in the Named Insured's Advertisement;

**8.** Based upon or arising out of Personal and Advertising Injury arising out of piracy, unfair competition, infringement of title, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right; provided however, under this exclusion other intellectual property right does not include use of another's advertising idea in the Named Insured's Advertisement;

 Includes copyrighted material of Insurance Services Office, Inc. with its permission. 

Case 7:25-cv-00370 Document 1-24 Filed on 07/25/25 in TXSD Page 41 of 99



9. Based upon or arising out of Personal and Advertising Injury arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control;

10. For any Personal and Advertising Injury committed by any Insured whose business is:

    a. Advertising, broadcasting, publishing, or telecasting;

    b. Designing or determining content for websites for others; or

    c. An Internet access, content, search or service provider;

11. Based upon or arising out of Personal and Advertising Injury arising out of the unauthorized use of another party's name or product in the Named Insured's email address, domain name or metatag, or any similar device to mislead another party's customers or potential customers;

12. Based upon or arising out of a breach of contract; provided, however, this exclusion shall not apply to an implied contract to use another's advertising idea in the Named Insured's Advertisement; or

13. Based upon or arising out of the failure of products, goods or services to conform with any statement of quality or performance made in the Named Insured's Advertisement.

**D.** With respect Coverage C., the Company will not pay any expenses for Bodily Injury:

1. To any Insured;

2. To a person hired to do work for or on behalf of the Insured or a tenant of the Named Insured;

3. To a person injured on that part of premises owned or rented by the Named Insured that the person normally occupies;

4. To a person, whether or not an employee of an Insured, if benefits for the Bodily Injury are payable or must be provided under any workers' compensation or disability benefits law or under any similar law;

5. To a person injured while taking part in athletics;

6. Included in the Products-Completed Operations Hazard;

7. Excluded under Coverage A.; or

8. To any patient, person or resident of a facility receiving services of a professional nature.

## TERRITORY

The insurance afforded by this Coverage Part applies worldwide, provided the Claim is made in the United States of America, its territories or possessions or Puerto Rico.

## LIMITS OF LIABILITY

**A.** **Coverage A. - Limit of Liability-Each Occurrence:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims under Coverage A. because of all Bodily Injury or Property Damage sustained by one or more persons or organizations as the result of any one Occurrence shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Occurrence.

**B.** **Coverage A. - Limit of Liability-Fire Damage:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims, including those subject to the above provision regarding the Coverage A. - Limit of Liability – Each Occurrence, because of Property Damage to premises, while rented to the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises arising out of any one fire, shall not exceed the Limit of Liability stated in the Declarations as applicable to Fire Damage – Any One Fire.

**C.** **Coverage B. - Limit of Liability-Each Person or Organization:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims under Coverage B. because of all Personal and Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Person or Organization.

 Includes copyrighted material of Insurance Services Office, Inc. with its permission. 

D. **Coverage C. – Medical Payments: Limit of Liability–Each Injured Person:** The total liability of the Company for medical expenses under Coverage C. because of Bodily Injury sustained by any one person shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Injured Person.

E. **Limit of Liability – Coverage Part Aggregate:** Subject to the above Limits of Liability A., B., C. and D., the total liability of the Company shall not exceed the Coverage Part Aggregate Limit of Liability stated in the Declarations for all Damages and Claim Expenses for Coverage A. and B. and all medical expenses under Coverage C.

F. **Deductible:** The applicable Deductible amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence under Coverage A. and to each person or organization under Coverage B. and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Occurrence under Coverage A. or each person or organization under Coverage B. shall not exceed the applicable Deductible amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

G. **Multiple Insureds, Claims and Occurrences:** Under Coverage A. the inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability applicable to Coverage A. stated in the Declarations. More than one Claim arising out of a single Occurrence or a series of related Occurrences shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

A. **Defense, Investigation and Settlement of Claims:** The Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1. Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the applicable Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Named Insured's domicile, stated in the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   a. Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

   b. Providing any other reasonable information requested;

   c. Providing fully itemized billing on a periodic basis; and

   d. Cooperating with the Company and the Insured in resolving any discrepancies;

   And the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

B. **Consent to Settlement:** The Company may make such investigation and settlement of any Claim as it deems expedient.

## CLAIM REPORTING PROVISION

It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Occurrence or offense that happens during the Policy Period which may give rise to a Claim against the Insured.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Corporation, P.O. Box 2009, Glen Allen, VA 23058-2009, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

## OTHER CONDITIONS

**A. Prevention of Loss:** In the event of an Occurrence or an offense involving the Specified Products, Goods, Operations or Premises stated in the Declarations and covered by this Coverage Part, the Insured shall promptly, at his/her expense, take all reasonable steps to prevent other Bodily Injury, Property Damage or Personal and Advertising Injury from arising out of the same or similar conditions.

**B. Other Insurance:** With respect to Coverage C., Common Policy Conditions E. Other Insurance, shall not apply.

**C. Reporting of Changes in Specified Products, Goods, Operations and Premises:** The premium charged for this Coverage Part is based on those Specified Products, Goods, Operations and Premises stated in the Declarations and identified in the underwriting information submitted to the Company on behalf of the Insured at the time of policy inception. The Insured shall report promptly to the Company any changes in those Specified Products, Goods, Operations or Premises stated in the Declarations as described below, and the Company shall have the right to adjust the premium and/or Deductible(s) for such changes, based on its sole assessment of the additional exposure(s) presented.

Changes to report:

1. Any changes to manufacturing or servicing premises requiring structural alterations, or acquisition of additional manufacturing or servicing premises;
2. Any changes in manufacturing or servicing operations which is likely to result in an annual increase in payrolls of twenty-five percent (25%) or more;
3. Any change in operations which are not accurately described by the description as stated in the Declarations.

This Coverage Part shall apply to only those Specified Products, Goods, Operations and Premises stated in the Declarations, irrespective of any changes reported.


Includes copyrighted material of Insurance Services Office, Inc. with its permission.

MARKEL®

# EVANSTON INSURANCE COMPANY

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

Throughout this policy, the term Company refers to the insurance company providing this insurance.

**A. CANCELLATION**

This policy may be cancelled by the Named Insured on behalf of all Insureds by mailing to the Company written notice as stated in the Notices item of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the Company shall retain the customary short rate proportion of the premium. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company by mailing to the Named Insured, at the address stated in the Declarations written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium or Deductible when due, including premium and deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured or the Company shall be equivalent to mailing. If cancelled by the Company, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

**B. CHANGE IN CONTROL OF NAMED INSURED**

If after the inception date of the policy:

1. The Named Insured is merged into or consolidated with another organization such that it is not the surviving organization, or sells all or substantially all of its assets to another organization or person or group of organizations and/or persons acting in concert;
2. Another organization or person or group of organizations and/or persons acting in concert shall acquire an amount of the voting interest representing more than fifty percent (50%) of the voting rights for the election or appointment of directors or trustees of the Named Insured, or acquires the voting rights of such an amount of such interest; or
3. A receiver, liquidator, conservator, trustee or similar official is appointed with respect to the Named Insured;

no coverage shall be afforded under this policy unless:

a. Written notice of such transaction or event is given to the Company by the Named Insured as soon as practicable, but in no event later than thirty (30) days after such transaction or event, including complete details of the nature of such transaction or event and the other organization, person, group of organizations, persons acting in concert, receiver, liquidator, conservator, trustee and/or similar official appointed with respect to the Named Insured;

b. The Named Insured submits such additional information in connection therewith as the Company may deem necessary;

c. The Company, at its sole discretion, agrees to continue coverage by written endorsement to the policy; and

d. The Named Insured agrees to accept any special terms, conditions, exclusions or additional premium charge as may be required by the Company.

**C. REPRESENTATIONS**

By acceptance of this policy, the Insureds agree as follows:

1. That the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

2. That the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

**D. ENTIRE AGREEMENT**

The Declarations, Common Policy Conditions, Coverage Part(s), the application(s) and any written endorsements attached hereto shall be deemed to be a single unitary contract.

**E. OTHER INSURANCE**

This insurance shall be in excess of the applicable Deductible stated in the Declarations and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

If any Claim under this policy is also covered by one or more policies issued by the Company or any of its affiliated companies affording coverage to the Named Insured or to any organization or person who controls, is controlled by, or is affiliated by common control with the Named Insured unless such other insurance is written only as specific excess insurance or umbrella insurance over the Limits of Liability provided in this policy, then with respect to such Claim:

1. The Limit of Liability available under this policy will be equal to the percentage that this policy's available Limit of Liability bears to the total combined Limits of Liability available under all applicable policies; and

2. The total Limit of Liability available for such Claim shall not exceed the greater/est available Limit of Liability remaining on all such policies and its payment shall extinguish the Company's and its affiliated companies' liability on all such policies for such Claim.

**F. CHANGES**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this insurance.

**G. ASSIGNMENT OF INTEREST**

Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

**H. SUBROGATION**

In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all Insureds to the extent of such payment. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Claim to prejudice such rights.

The Company shall not exercise any such rights against any person or organization included in the definition of Insured. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any Claim brought about or contributed to by an intentional, willful, dishonest, fraudulent act or omission of such Insured or by an act or omission of such Insured that constitutes a willful violation of any statute or regulation.

Any amount so recovered, whether effected by the Company or by the Insured, shall first be used for the repayment of expenses incurred toward subrogation; second, for any Damages and Claim Expenses payment by the Insured

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 48 of 103

which is in excess of the amount of the Limit of Liability under this policy and which is excess of any amount paid by any insurer under any other policy; third, for any damages and claims expenses payment by any excess insurer on behalf of the Insured; fourth, for any damages and claim expenses payment by any primary insurer on behalf of the Insured; and, last, for repayment of the Insured's Deductible.

**I. ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with the Company and upon the Company's request, the Insured shall:

1. Submit to examination and interview by a representative of the Company, under oath if required;
2. Attend hearings, depositions and trials;
3. Assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits;
4. Give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim; and
5. Provide any information required to comply with federal or state reporting regulations;

All without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the prior written consent of the Company.

**J. FALSE OR FRAUDULENT CLAIMS**

If any Insured shall commit fraud in proffering any Claim, this insurance shall become void as to such Insured from the date such fraudulent Claim is proffered.

**K. PREMIUM AND AUDIT**

Upon expiration of this policy, the Named Insured shall furnish to the Company a statement of the Named Insured's actual total premium base as stated in the Declarations for the Policy Period. The actual earned premium shall be computed thereon at the premium rate stated in the Declarations. If the actual earned premium is more than the deposit premium stated in the Declarations, the Named Insured shall pay the difference to the Company; if less, the Company shall refund the difference to the Named Insured except that the Company shall be entitled to the minimum premium as stated in the Declarations. The Company shall have the right to require of the Named Insured, at any time within the said Policy Period or one year thereafter, a sworn statement of the entire amount (or number) of such premium base during the whole or any specified part of the said period, and the Named Insured shall furnish said statement within ten (10) days after request. The statement referred to shall be subject to verification and audit by a duly authorized representative of the Company, who shall have the right and opportunity to examine the books and records of the Named Insured as respects such premium base, and such examination may be made at any time during the said period and within three (3) years thereafter. The rendering of any estimate or statement or the making of any previous settlement shall not bar the examination herein provided for, nor the Company's right to additional premium.

**L. INSPECTION**

The Company shall be permitted but not obligated to inspect the Insured's operations at any time. Neither the Company's right to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such operations are safe or healthful, or are in compliance with any law, rule or regulation.

**M. ACTION AGAINST THE COMPANY**

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 49 of 103

**N. AUTHORIZATION**

By acceptance of this policy, the first person or organization stated in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period, if available; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such person or organization shall act on their behalf.

**O. POLICY EXTENDED REPORTING PERIOD – ALL CLAIMS MADE COVERAGES**

The Named Insured's right to exercise the Extended Reporting Period under any Coverage Part shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Coverage Parts that provide coverage on a claims made basis.

**P. TERMS AND CONDITIONS**

This policy is comprised of these Common Policy Conditions, the Declarations, various Coverage Parts and endorsements, if applicable, and the application. Although various Coverage Parts may be referenced in this policy, a Coverage Part is included within this policy only if that Coverage Part is stated as being purchased in the Coverage Schedule in Item 5. of the Declarations.

Except for these Common Policy Conditions or unless stated to the contrary in any Coverage Part or endorsement, the terms and conditions of each Coverage Part of this policy apply only to that Coverage Part and shall not apply to any other Coverage Part of this policy. Any defined term referenced in the Common Policy Conditions but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part. If any provision in the Common Policy Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

**Q. SERVICE OF SUIT**

Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Corporation, 10275 West Higgins Road, Suite 750, Rosemont, Illinois 60018 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**R. NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)**

The insurance does not apply:

**1.** Under any Liability Coverage, to Bodily Injury or Property Damage:

**a.** With respect to which an Insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**b.** Resulting from the Hazardous Properties of Nuclear Material and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the Insured is, or had this policy not been issued would be, entitled to indemnity

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 50 of 103

from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to Bodily Injury resulting from the Hazardous Properties of Nuclear Material and arising out of the operation of a Nuclear Facility by any person or organization.

3. Under any Liability Coverage, to Bodily Injury or Property Damage resulting from Hazardous Properties of Nuclear Material, if:

   **a.** The Nuclear Material **(1)** is at any Nuclear Facility owned by, or operated by or on behalf of, an Insured or **(2)** has been discharged or dispersed therefrom;

   **b.** The Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an Insured; or

   **c.** The Bodily Injury or Property Damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to Property Damage to such Nuclear Facility and any property thereat.

4. As used in this exclusion:

Hazardous Properties includes radioactive, toxic or explosive properties.

Nuclear Material means Source Material, Special Nuclear Material or By-Product Material.

Source Material, Special Nuclear Material, and By-Product Material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

Spent Fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

Waste means any waste material **(1)** containing By-Product Material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its Source Material content, and **(2)** resulting from the operation by any person or organization of any Nuclear Facility included under the first two paragraphs of the definition of Nuclear Facility.

Nuclear Facility means:

**a.** Any Nuclear Reactor;

**b.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing Spent Fuel, or **(3)** handling, processing or packaging Waste;

**c.** Any equipment or device used for the processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste;

And includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

Nuclear Reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

Property Damage includes all forms of radioactive contamination of property.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 51 of 103

MARKEL®

POLICY NUMBER: MKLV4PSM001088

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INSURANCE COVERAGE PART – OCCURRENCE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE COVERAGE PART - OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that, with respect to any Claim otherwise covered hereunder, this Coverage Part shall not exclude any Claim based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance of Act. The federal Terrorism Risk Insurance of Act sets forth the following criteria for a Certified Act of Terrorism:

1. The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Calendar Year and the Company has met the Company's deductible under the Terrorism Risk Insurance Act, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such cases insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of Treasury.

All other terms and conditions remain unchanged.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 52 of 103

MARKEL

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASBESTOS EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that the insurance provided by this policy shall not apply to any Claim, loss or expense caused by, resulting from or arising out of asbestos, asbestos fibers or any product or material containing asbestos in any form, under any theory of liability whatsoever.

It is further agreed that the Company shall have no duty to defend or to pay or reimburse for any fees, costs or expenses in the investigation or defense of any Claim excluded herein.

All other terms and conditions remain unchanged.

MARKEL®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT

Except with respect to any policy issued in any state in which the Insurer is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, 10275 West Higgins Road, Suite 750, Rosemont, Illinois 60018, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

MARKEL

POLICY NUMBER: MKLV4PSM001088

# EVANSTON INSURANCE COMPANY

## MINIMUM EARNED PREMIUM ENDORSEMENT

In the event that this policy is cancelled by the Named Insured who is authorized to act on behalf of all insureds, the policy premium is subject to a minimum earned premium of 25%.

All other terms and conditions remain unchanged.

POLICY NUMBER: MKLV4PSM001088

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LONGER DURATION EXTENDED REPORTING PERIOD AVAILABILITY

This endorsement modifies insurance provided under the following:

PHYSICIANS, SURGEONS, DENTISTS AND PODIATRISTS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED ERRORS AND OMISSIONS LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that in addition to the availability of the Extended Reporting Period for the period of months stated in Item 8 of the Declarations, an Extended Reporting Period of the following duration shall also be available:

48 months;
60 months;
72 months; or
84 months.

The Named Insured must make a written request for the longer duration Extended Reporting Period received by the Company within 10 days after the end of the Policy Period. The written request must specify from the options stated above which period of Extended Reporting Period is requested. The Company will determine the additional premium to be charged for such Extended Reporting Period.

The Company will provide to the Named Insured in writing the amount of the additional premium for an Extended Reporting Period of the duration specified within 10 days of receipt of the Named Insured's written request.

All other terms and conditions of the Section Extended Reporting Period shall apply with regard to the Named Insured's exercise of any such longer duration Extended Reporting Period.

All other terms and conditions remain unchanged.

Case 7:25-cv-00370 Document 1 Filed on 07/25/25 in TXSD Page 54 of 99

INTERLINE

MARKEL

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TEXAS ENDORSEMENT

This endorsement modifies insurance provided under the following:

ASSOCIATION ERRORS AND OMISSIONS LIABILITY INSURANCE POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
DATA BREACH AND PRIVACY LIABILITY, DATA BREACH LOSS TO INSURED AND ELECTRONIC MEDIA LIABILITY INSURANCE POLICY
DATABREACH℠ INSURANCE COVERAGE PART FOR INFORMATION TECHNOLOGY PROFESSIONALS
EXCESS FOLLOW FORM POLICY
EXCESS LIABILITY INSURANCE POLICY
GENERAL LIABILITY INSURANCE (CLAIMS MADE) COVERAGE PART FOR INFORMATION TECHNOLOGY PROFESSIONALS
GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART – CLAIMS MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART – OCCURRENCE COVERAGE
MANUFACTURER'S PRODUCT ENGINEERING OR DESIGN ERRORS & OMISSIONS INSURANCE POLICY
MSTAR PHYSICIANS PROFESSIONAL LIABILITY INSURANCE
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY INSURANCE FOR WOMEN PHYSICIANS
SPECIFIED MEDICAL PROFESSIONS EXCESS LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART - OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART - CLAIMS MADE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED PRODUCTS AND COMPLETED OPERATIONS LIABILITY INSURANCE POLICY

In consideration of the premium paid, if a Claim covered under this policy or applicable coverage part does not require the Insured to consent to settlement of such Claim, the Company will notify the Named Insured in writing of:

1. an initial offer to settle a Claim against an Insured not later than the 10th day after the date an initial offer to settle a Claim is made; and
2. a settlement of a Claim against an Insured not later than the 30th day after the date a Claim is settled.

All other terms and conditions remain unchanged.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 57 of 103

MARKEL®

POLICY NUMBER: MKLV4PSM001088

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS D.1.

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that Section Definitions D.1. is deleted and replaced with the following:

1. Multiplied portions of damages in excess of actual damages, including trebling of damages;

All other terms and conditions remain unchanged.

MARKEL

POLICY NUMBER: MKLV4PSM001088

# EVANSTON INSURANCE COMPANY

## DATABREACH℠ COVERAGE PARTS ENDORSEMENT

This endorsement adds to the insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is understood and agreed that the coverages afforded by this Endorsement are subject to the terms, conditions and limitations of this policy, except to the extent that such terms, conditions and limitations are modified herein. Solely with respect to the coverages afforded by this Endorsement, the policy is amended as follows:

**Claims Made and Reported Coverage:** With regard to DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the coverage afforded by this Endorsement is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company during the Policy Period or the Extended Reporting Period, if exercised, or within sixty (60) days after the expiration of the Policy Period or the Extended Reporting Period, if exercised.

**Notice:** DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, of this Endorsement contains provisions that reduce the limits of liability stated in the Endorsement by the costs of legal defense.

The limits of liability applicable to the coverage parts provided under this Endorsement are in addition to, and do not erode the limits of liability provided under the Professional Liability coverage afforded in the policy to which this endorsement attaches.

Please read this Endorsement carefully.

1. Section THE INSURED is deleted and replaced with the following:

   **THE INSURED**

   The unqualified word "Insured" wherever used in this endorsement either in the singular or plural, means:

   **A.** The Named Insured herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations.

2. Section INSURING AGREEMENTS is amended by the addition of the following:

   **DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part – Claims Made and Reported Coverage:**

   The Company shall pay on behalf of the Insured, all sums which the Insured shall become legally obligated to pay as Damages and Regulatory Fines both of which are a result of a Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company during the Policy Period or the Extended Reporting Period, if exercised, or within sixty (60) days after the expiration of the Policy Period or Extended Reporting Period, if exercised, by reason of an Unauthorized Access or a Potential Unauthorized Access, provided:

   1. The entirety of the Unauthorized Access or the discovery of the Potential Unauthorized Access happens during the Policy Period or on or after 01/26/2023 and before the end of the Policy Period; and

   2. Prior to the effective date of this policy the Named Insured or any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured had no knowledge of such Unauthorized Access, Potential Unauthorized Access or any computer security incident, intrusion, breach, compromise, theft, loss or use of the Named Insured's Electronic Communications System which may have led a reasonable person in such party's position to conclude that a Claim was likely.

**DataBreach[SM] COVERAGE B. - Data Breach Loss to Insured Coverage Part – Occurrence Coverage:**

The Company shall indemnify the Named Insured for the amount of Loss which results directly from an Unauthorized Access which occurs during the Policy Period and is reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES B., provided:

1. Prior to the effective date of this policy the Named Insured or any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured had no knowledge that such Unauthorized Access had occurred in whole or in part, and if such party knew prior to the Policy Period that the Unauthorized Access had occurred, then any continuation, change or resumption of such Unauthorized Access during or after the Policy Period will be deemed to have been known prior to the Policy Period;
2. Unauthorized Access, which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by the Named Insured or any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured, includes any continuation, change or resumption of that Unauthorized Access after the end of the Policy Period; and
3. Unauthorized Access will be deemed to have been known to have occurred at the earliest of the Named Insured or any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured:
   - **(a)** Reporting all, or any part, of the Unauthorized Access to the Company, any other insurer or any insurance representative;
   - **(b)** Incurring Loss or Breach Mitigation Expense because of the Unauthorized Access; or
   - **(c)** Becoming aware by any other means that Unauthorized Access has occurred or has begun to occur.

**DataBreach[SM] COVERAGE C. - Breach Mitigation Expense Coverage Part – Occurrence Coverage:** The Company shall, subject to the prior written consent of the Company, reimburse the Named Insured for the reasonable cost actually incurred by the Named Insured for Breach Mitigation Expense which results directly from an Unintentional Data Compromise which occurs during the Policy Period and is reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES C., provided:

1. The entirety of the Unintentional Data Compromise occurs during the Policy Period; and
2. Prior to the effective date of this policy the Named Insured or any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured had no knowledge such Unintentional Data Compromise of:
   - **a.** The Named Insured's Electronic Communications System; or
   - **b.** The Electronic Communications System of a third party responsible for storing and securing the data of the Named Insured;

   had occurred in whole or in part, which may have led a reasonable person in such party's position to conclude that incurring such expenses was likely, and if any such party knew prior to the Policy Period that such Unintentional Data Compromise had occurred, then any continuation, change or resumption of such Unintentional Data Compromise during or after the Policy Period will be deemed to have been known prior to the Policy Period; and
3. Unintentional Data Compromise will be deemed to have been known to have occurred at the earliest of any Insured:
   - **a.** Reporting all, or any part, of an Unauthorized Access or Potential Unauthorized Access to the Company, any other insurer or any insurance representative;
   - **b.** Incurring Loss or Breach Mitigation Expense because of an Unauthorized Access or Potential Unauthorized Access; or
   - **c.** Becoming aware by any other means that an Unintentional Data Compromise has occurred or has begun to occur.

The Named Insured must submit to the Company satisfactory written proof of payment of such costs within one (1) year after the expiration or cancellation of this policy.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 60 of 103

If such expenses as are reimbursable under this DataBreach[SM] COVERAGE C. - Breach Mitigation Expense Coverage Part become part of a judgment, award or settlement, such expenses shall not be subject to coverage under DataBreach[SM] COVERAGE C. - Breach Mitigation Expense Coverage Part.

3. Section DEFINITIONS is deleted and replaced with the following:

**DEFINITIONS**

**A. Authority** means any agency of:

1. A federal, state or local government of the United States of America, its territories or possessions or Puerto Rico;
2. A federal, provincial or local government of Canada;
3. The government of the European Union (EU) or any member nation; or
4. The PCI Security Standards Council;

any of which is charged with the administration or enforcement of laws or regulations relating to the use, transfer or storage of electronic communications or data storage systems.

**B. Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these; provided, however, Bodily Injury does not include humiliation or the infliction of emotional distress arising solely from an Unauthorized Access or Potential Unauthorized Access.

**C. Breach Mitigation Expense** means expenses incurred by the Insured with the prior written consent of the Company for:

1. The services of a public relations professional, or other publicity expenses that are recommended by a public relations professional to respond to any actual adverse publicity in the media, that is the result of an Unauthorized Access or Potential Unauthorized Access;
2. Expenses, including but not limited to patient notification and related legal fees, that are incurred to comply with a Security Breach Notice Law and that are the result of an Unauthorized Access or Potential Unauthorized Access; and
3. Expenses associated with voluntarily providing credit monitoring services to patients and individuals effected by an Unauthorized Access or Potential Unauthorized Access.

**D. Claim** means the Insured's receipt of:

1. A written demand for damages;
2. The service of suit or institution of arbitration proceedings against the Insured; or
3. A written notice of the institution of a charge against the Insured by any Authority or of any administrative proceeding initiated by an Authority including any investigation, conciliation meeting or hearing;

all as a result of an Unauthorized Access or Potential Unauthorized Access.

**E. Claim Expenses** means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this Endorsement, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include:

1. Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or
2. Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

**F. Damages** means the monetary portion of any judgment, award or settlement, including punitive damages where insurable; provided, however, Damages shall not include:

1. Multiplied portions of damages in excess of actual damages, including trebling of damages;

2. The cost of any modifications or changes to the Insured's security measures, procedures, software or hardware required or agreed to by the Insured to satisfy a judgment, award or settlement;

3. Any cost required to repair, build or modify property to comply with any award by a court, administrative order, arbitration award or any similar judgment;

4. Taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured, other penalties imposed by law or Regulatory Fines;

5. Sanctions;

6. Matters which are uninsurable under the law pursuant to which this Endorsement shall be construed; or

7. The return, withdrawal, reduction, restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured.

G. **Electronic Communications System** means any wired, wireless, radio, electromagnetic, photo-optical or photo-electronic facility for the transmission of electronic communications; any electronic data processing system, network or related electronic equipment for the storage of such communications; and any computer.

H. **Employee** means any natural person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes a Leased Worker but does not include any Temporary Worker or independent contractor.

I. **Leased Worker** means any natural person leased to the Named Insured by a labor leasing organization, under an agreement between the Named Insured and the labor leasing organization, to perform duties related to the conduct of the Named Insured's business and which are at the Insured's direction. Leased Worker does not include a Temporary Worker.

J. **Forensic Expense** means reasonable and necessary costs incurred by the Named Insured to engage the services of a third party computer security expert to determine the existence and cause of any Unauthorized Access.

K. **Interrelated Unauthorized Accesses** means Unauthorized Access(es) and/or Potential Unauthorized Access(es) which are logically or causally connected by reason of any common fact, incident, circumstance, situation, or any computer security incident, intrusion, breach, compromise, theft, loss or use of the Named Insured's Electronic Communications System.

L. **Loss** means:

1. Reasonable and necessary costs incurred by the Named Insured to restore with due diligence and dispatch the Named Insured's Electronic Communications System to the condition that existed prior to an Unauthorized Access, including reconstruction of programs, electronic data and media which form a part of the Named Insured's Electronic Communications System; and

2. Forensic Expense;

provided, however, Loss shall not include: (a) any cost or charges associated with building, modifying or upgrading the Named Insured's Electronic Communications System, or any software, security measures or procedures; (b) any cost required to repair, build or modify tangible property to comply with any award or order by a court, an Authority, arbitration or any similar proceeding; (c) any loss of reputation of the Named Insured or loss of customer confidence in the Named Insured or the value imputed to such loss; (d) expenses incurred by the Insured in establishing the amount of any Loss covered under this Endorsement; or (e) loss of business income.

M. **Policy Period** means the period stated from the inception date of this policy to the policy expiration date stated in in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

N. **Potential Unauthorized Access** means the threat or potential threat of an Unauthorized Access arising from a theft or loss of any component of the Named Insured's Electronic Communications System.

O. **Pollutants** mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 62 of 103

**P. Private Data** means data containing an individual's:

1. Drivers license or other state-issued identification number; social security number; unpublished telephone number; savings account, checking account, credit card or debit card number each when in combination with the security code, access code, password or pin for such account or card number;
2. "Nonpublic personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant thereto;
3. "Protected healthcare information" as defined in the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended, and regulations issued pursuant thereto, and medical and healthcare information;
4. Private personal information as defined under a Security Breach Notice Law; and
5. Private personal information as defined under the law of a country other than the United States, which law is intended to provide for the protection of such private personal information;

not including any lawfully available data accessible by the general public.

**Q. Property Damage** means physical injury to tangible property, including all resulting loss of use of that property or loss of use of tangible property that is not physically injured; provided, however, damage to, corruption of or inability to access data, software and computer networks shall not be considered to be loss of use of tangible property.

**R. Regulatory Fines** means civil fines and penalties assessed against the Insured by an Authority as a result of a Claim subject to coverage under DataBreach[SM] COVERAGE A. - Data Breach and Privacy Liability Coverage Part of this Endorsement.

**S. Security Breach Notice Law** means any law, statute or regulation within the United States of America, its territories or possessions, Puerto Rico or Canada requiring the Named Insured to notify individuals of the compromise or possible compromise of the security of their confidential information in the Named Insured's care, custody or control and the European Union (EU) Data Protection Act of 1995.

**T. Temporary Worker** means any natural person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

**U. Unauthorized Access** means a breach of the Named Insured's security measures, systems, procedures, or stated privacy policy, or any intentional violation, interception, or use or misuse of the Named Insured's Electronic Communications System, whether or not for profit or gain, by any person, without the permission, knowledge or ratification of the Insured. Unauthorized Access also includes:

1. Access to the Named Insured's Electronic Communications System that is with the Insured's permission where such permission is the result of fraud or deception;
2. Use of the Named Insured's Electronic Communications System by a party authorized by the Insured to use such system, who does so for an unauthorized purpose;
3. The introduction of programs into the Named Insured's Electronic Communications System which contain fraudulent or destructive instructions or code including any inadvertent transmission of such programs to a third party;
4. A credible threat or an extortion demand received by the Named Insured threatening or portending loss, injury or damage to:
   a. The Named Insured's Electronic Communications System, including programs, electronic data and media which form a part of the Named Insured's Electronic Communications System; or
   b. Money, securities, bonds or similar financial instruments, solely to the extent that record of such is maintained in digital or electronic format on the Named Insured's Electronic Communications System;

   for the purpose of extorting money or other valuable consideration from the Named Insured; and
5. Failure to prevent a denial of service attack on the Named Insured's Electronic Communications System or to prevent the use of the Named Insured's Electronic Communications System by an unauthorized user or code to launch a denial of service attack on a third party;

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 63 of 103

6. Solely with regard to:

   a. DataBreach[SM] COVERAGE A. - Data Breach and Privacy Liability Coverage Part; and

   b. DataBreach[SM] COVERAGE C. - Breach Mitigation Expense Coverage Part;

   the theft or loss of any paper records; and

7. Solely with regard to DataBreach[SM] COVERAGE C. - Breach Mitigation Expense Coverage Part:

   The failure of any third party to prevent the unauthorized viewing, copying or distribution of Private Data which the Named Insured has entrusted to such party under a written contract or agreement that specifically requires such party to protect the confidentiality of the Private Data so entrusted.

V. **Unintentional Data Compromise** means any computer security incident, intrusion, breach, compromise, theft, loss or misuse of the Private Data of the Named Insured's patient(s) and/or of any past or current principal, partner, officer, director, trustee, shareholder, Employee, manager or member of the Named Insured.

W. **Volunteer Worker** means any natural person who is not an Employee of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

4. Section THE EXCLUSIONS is deleted and replaced with the following:

**THE EXCLUSIONS**

A. With respect to all Coverage Parts provided by this Endorsement, this Endorsement does not apply to any Claim, Loss or Breach Mitigation Expense:

   1. Caused by access to the Named Insured's Electronic Communications System by any government, governmental agency or subagency, or any agents thereof while acting on behalf of such entity;

   2. Due to riot, civil commotion, war, insurrection or usurped power;

   3. Based upon or arising out of Bodily Injury or Property Damage;

   4. Based upon or arising out of liability of others assumed by the Insured under any contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of such contract or agreement;

   5. Based upon, arising out of, or any way involving any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

   6. Based upon, arising out of, or in any way involving conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to: (a) the strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation; or (b) Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation;

   7. Based upon, arising out of, or in any way involving any:

      a. Actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of Pollutants; or

      b. Direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or to pay for or contribute to the costs of undertaking such actions;

   8. Brought by or on behalf of any Employee, former Employee or prospective Employee based upon, arising out of, or in any way involving the employment relationship or the nature, terms or conditions of employment or any workplace tort;

   9. Brought by, in the name of, or on behalf of any past or current principal, partner, officer, director, trustee, shareholder, Employee, Volunteer Worker, manager or member of the Named Insured; provided, however, this exclusion shall not apply to any Claim arising out of Unauthorized Access or Potential Unauthorized Access to the personal information of any past or current principal, partner, officer, director, trustee, shareholder,

Employee, Volunteer Worker, manger or member of the Named Insured which is in the care, custody or control of the Named Insured;

**10.** Based upon, arising out of, or in any way involving the insolvency, receivership, bankruptcy, liquidation of the Named Insured or of any subsidiary thereof whether or not included in the definition of Insured;

**11.** Based upon or arising out of any warranties or guarantees, express, implied or otherwise, or any cost estimates;

**12.** Based upon or arising out of any conversion, misappropriation, commingling of or defalcation of funds or property;

**13.** Based upon or arising out of any inability or failure of any party to pay or collect monies;

**14.** Based upon or arising out of infringement or inducement of infringement of patent or trade secret; or

**15.** Based upon, arising out of, or in any way involving an act, error or omission in the performance of professional services rendered or that should have been rendered by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible.

**B.** With respect to DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part this Endorsement does not apply to any Claim:

**1.** Made by any person or organization which is operated, managed or owned, in whole or in part, by the Named Insured or any parent organization, subsidiary, division or affiliated organization thereof.

**C.** With respect to DataBreach℠ COVERAGE B. - Data Breach Loss to Insured Coverage Part, this Endorsement does not apply to any Loss:

**1.** Caused by theft, physical damage or destruction of the Named Insured's Electronic Communications System or any part thereof; provided, however, this exclusion shall not apply to destruction of programs, electronic data and media caused by an Unauthorized Access;

**2.** Based upon or arising out of theft, or alleged theft, of money, securities, bonds, or similar financial instruments with monetary value caused or contributed to by any fraudulent, dishonest or criminal act committed by any person who is a past or current principal, partner, officer, director, trustee, shareholder, Employee, Volunteer Worker, manager or member of the Named Insured at the time of the Unauthorized Access, whether acting alone or in collusion with others; or

**3.** Of the value of trade secrets, confidential processing methods or other confidential or proprietary information.

**5.** Section TERRITORY is deleted and replaced with the following:

**TERRITORY**

The insurance afforded by this Endorsement applies worldwide, provided the Claim is made or the Loss is incurred in the United States of America, its territories or possessions or Puerto Rico.

**6.** Section LIMITS OF LIABILITY is deleted and replaced with the following:

**LIMITS OF LIABILITY**

**A. Limit of Liability - DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part - Each Claim:** The liability of the Company under DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part for the combined total of Damages, Regulatory Fines and Claim Expenses for each Claim first made against the Insured during the Policy Period or Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES A., Claim Reporting Provision, shall not exceed the $50,000.

**B. Limit of Liability - DataBreach℠ COVERAGE B. - Data Breach Loss to Insured Coverage Part - Each Unauthorized Access:** The liability of the Company under DataBreach℠ COVERAGE B. - Data Breach Loss to Insured Coverage Part for all Loss resulting directly from each Unauthorized Access which occurs during the Policy Period and is reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES B., Loss Reporting Provision, shall not exceed $5,000.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 65 of 103

**C. Limit of Liability – DataBreach℠ COVERAGE C. - Breach Mitigation Expense Coverage Part - Each Unintentional Data Compromise:** The liability of the Company under DataBreach℠ COVERAGE C. - Breach Mitigation Expense Coverage Part for Breach Mitigation Expense for any Unintentional Data Compromise which occurs during the Policy Period and is reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES C., shall not exceed $50,000.

**D. Limit of Liability - Aggregate:** Subject to the above Limits of Liability A., B. and C., the combined total liability of the Company for all coverage afforded by all Coverage Parts of this Endorsement shall not exceed $50,000.

**E. Multiple Insureds, Claims, Losses and Claimants:** The inclusion herein of more than one Insured in any Claim or the making of Claims by, or reporting of Loss incurred by, more than one person or organization shall not operate to increase the Limits of Liability stated in this Endorsement.

1. With regard to DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, more than one Claim arising out of a single Unauthorized Access or Interrelated Unauthorized Accesses shall be treated as a single Claim. Such single Claim shall be deemed first made on the date on which the earliest Claim arising out of such Unauthorized Access or Interrelated Unauthorized Accesses is made or with regard to notice given to and accepted by the Company pursuant to Section CLAIMS, LOSS AND EXPENSES D., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

2. With regard to DataBreach℠ COVERAGE B. - Data Breach Loss to Insured Coverage Part, more than one Loss arising out of a single Unauthorized Access shall be considered a single Unauthorized Access.

3. With regard to DataBreach℠ COVERAGE C. - Breach Mitigation Expense Coverage Part, all Breach Mitigation Expenses arising out of a single Unintentional Data Compromise or a series of related Unintentional Data Compromises, shall be treated as a single Unintentional Data Compromise.

7. Section DEFENSE AND CLAIM EXPENSES is deleted and replaced with the following:

**DEFENSE AND CLAIM EXPENSES**

**A. Defense and Investigation of Claims:** With regard to DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the Company shall have the right and duty to defend the Insured and to investigate any Claim to which coverage afforded by this Endorsement under DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part applies pursuant to the following provisions:

1. Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in this Endorsement. Such Claim Expenses shall reduce the applicable Limits of Liability. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability have been exhausted by payment(s) of Damages and/or Claim Expenses.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Named Insured's domicile, stated in the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   a. Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

   b. Providing any other reasonable information requested;

   c. Providing fully itemized billing on a periodic basis; and

   d. Cooperating with the Company and the Insured in resolving any discrepancies;

   and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in this Endorsement. Such Claim Expenses shall reduce the applicable Limits of Liability.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 66 of 103

3. The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

B. **Claim Settlement:** The Company may, at its sole discretion, investigate, negotiate and settle any Claim. The Named Insured will abide by the terms of such settlement.

C. **Loss or Breach Mitigation Expense Payment:** The Company may, at its sole discretion, investigate any Loss, any Breach Mitigation Expense, any Unintentional Data Compromise and any Unauthorized Access or Potential Unauthorized Access. The Company will indemnify the Named Insured within sixty (60) days after it receives the sworn proof of Loss under DataBreach℠ COVERAGE B. - Data Breach Loss to Insured Coverage Part or satisfactory written proof of payment of Breach Mitigation Expenses under DataBreach℠ COVERAGE C. - Breach Mitigation Expense Coverage Part, provided:

1. The Insured has complied with all the terms of this Endorsement; and

2. The Company and the Named Insured have agreed with the items included within and the amounts documented in the Named Insured's sworn proof of Loss and satisfactory written proof of payment of Breach Mitigation Expenses.

8. Section CLAIMS is deleted and replaced with the following:

**CLAIMS, LOSS AND EXPENSES**

A. **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Endorsement under DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and in no event later than sixty (60) days after the end of the Policy Period or the Extended Reporting Period, if exercised.

In the event a suit is brought against the Insured or a charge against the Insured is instituted by any Authority or any administrative action is initiated by an Authority, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B. **Loss Reporting Provision:** It is a condition precedent to coverage afforded by this Endorsement under DataBreach℠ COVERAGE B. - Data Breach Loss to Insured Coverage Part that the Named Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable and in no event later than sixty (60) days after the end of the Policy Period of any Loss which results directly from an Unauthorized Access which occurs during the Policy Period.

In the event of any Loss, the Insured must:

1. Notify law enforcement in the event of a theft;

2. Give the Company prompt notice of the Unauthorized Access;

3. As soon as practicable, provide a description of how, when and what elements of the Named Insured's Electronic Communications System were impacted by the Unauthorized Access;

4. Take all reasonable steps to protect the Named Insured's Electronic Communications System from further Unauthorized Access and to reduce Loss;

5. As often as may be reasonably required, permit the Company to inspect the Named Insured's Electronic Communications System and examine the Insured's books and records related to the Loss incurred; and

6. Provide, within sixty (60) days of the Company's request, a sworn proof of Loss, signed by the Named Insured, containing the information the Company requests to investigate the Loss.

C. **Breach Mitigation Expense Reporting Provision:** It is a condition precedent to coverage afforded by this Endorsement under DataBreach℠ COVERAGE C. - Breach Mitigation Expense Coverage Part that the Named Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable and in no event later than sixty (60) days after the end of the Policy Period of any Unintentional Data Compromise, Unauthorized Access or Potential Unauthorized Access which occurs during the Policy Period.

The Named Insured must:

1. Submit to the Company satisfactory written proof of payment of such Breach Mitigation Expenses within one (1) year after the expiration or cancellation of this policy;
2. As soon as practicable, provide a description of how, when and what elements, if any, of the Named Insured's or a third party's Electronic Communications System were impacted by the Unintentional Data Compromise, Unauthorized Access or Potential Unauthorized Access;
3. Take all reasonable steps to protect the Named Insured's Electronic Communications System from further Unauthorized Access, if applicable;
4. As often as may be reasonably required, permit the Company to inspect the Named Insured's Electronic Communications System and examine the Insured's books and records related to the Breach Mitigation Expense incurred.

**D. Discovery Clause:** Under DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, if during the Policy Period, the Insured first becomes aware of a specific Unauthorized Access or specific Potential Unauthorized Access which is reasonably expected to result in a Claim within the scope of coverage of this DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, then the Insured may provide written notice as stated in the Notices item of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Unauthorized Access or Potential Unauthorized Access shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is first received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1. The description of the specific Unauthorized Access or Potential Unauthorized Access;
2. The date on which such Unauthorized Access or Potential Unauthorized Access took place;
3. The injury or damage which has or may result from such Unauthorized Access or Potential Unauthorized Access;
4. The identity of any injured persons and/or organization subject to such injury or damage; and
5. The circumstances by which the Insured first became aware of such Unauthorized Access or Potential Unauthorized Access.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific Unauthorized Access or Potential Unauthorized Access which is reasonably expected to result in a Claim within the scope of coverage of this DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the Company at its sole option, may investigate such specific Unauthorized Access or Potential Unauthorized Access. Such matter shall be subject to all terms, conditions and provisions in this Endorsement as applicable to a Claim.

**E. Assistance and Cooperation of the Insured:** The Insured shall cooperate with the Company and upon the Company's request, the Insured shall:

1. Submit to examination and interview by a representative of the Company and while not in the presence of any other Insured, under oath if required;
2. Attend hearings, depositions and trials;
3. Assist in effecting settlement, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits; and
4. Give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and/or investigating any Claim or Loss and/or defending any Claim;

All without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 68 of 103

The Insured shall not, with respect to any Claim covered under this Endorsement, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without the Company's prior written consent, such consent not to be unreasonably withheld. Any costs and expenses incurred by the Insured prior to the Insured giving written notice of the Claim to the Company shall be borne by the Insured.

**F.** **False or Fraudulent Claims:** If any Insured shall commit fraud in proffering any Claim or Loss, this insurance shall become void as to such Insured from the date such fraudulent Claim or Loss is proffered.

**9.** Section EXTENDED REPORTING PERIOD is deleted and replaced with the following:

**EXTENDED REPORTING PERIOD**

**A.** With regard to DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the Named Insured's right to exercise the Extended Reporting Period under this Endorsement shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements in the policy for which an Extended Reporting Period is available.

**B.** If the Named Insured nonrenews this policy or cancels this policy pursuant to Common Policy Conditions A., Cancellation, or if the Company nonrenews this policy or cancels this policy pursuant to Common Policy Conditions A., Cancellation, for reasons other than nonpayment of premium, Deductible and/or Co-Insurance Obligation or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at the percentage stated in the Declarations of the adjusted annual premium for the Policy Period, subject to adjustment as per Common Policy Conditions J., Premium and Audit, but in no event less than the percentage stated in the Declarations of the annual minimum premium for the policy, to extend the coverage granted under DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part for the period of months stated in the Declarations, as elected by the Named Insured, to apply to Claims first made against the Insured during the period of months as elected, and reported to the Company pursuant to Section CLAIMS, LOSS AND EXPENSES A., Claim Reporting Provision of this Endorsement, following immediately upon the effective date of such cancellation or nonrenewal, by reason of any Unauthorized Access or Potential Unauthorized Access the entirety of which happened during the Policy Period or on or after the Retroactive Date stated in Section INSURING AGREEMENT, DataBreach℠ COVERAGE A. - Data Breach and Privacy Liability Coverage Part, Item 1., and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this Endorsement. This extended period of coverage as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this policy is immediately succeeded by similar claims made insurance coverage on which the applicable Retroactive Date is the same as or earlier than that stated above, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or Deductible and/or Co-Insurance Obligation and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

**C.** As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:

1. All Deductibles when due;
2. All Co-Insurance Obligations when due;
3. All premiums due for the Policy Period; and
4. All premium, deductibles and co-insurance obligations due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement.

The right to purchase the Extended Reporting Period shall terminate unless a written notice as stated in the Notices item of the Declarations of such election for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written notice of request and payment of additional

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 69 of 103

premium for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

**D.** The Named Insured shall pay any additional premium that may be due as a result of audit, promptly when due.

**E.** In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

**F.** The Extended Reporting Period shall not in any way increase the Limits of Liability stated in this policy or in this Endorsement.

**10.** Section OTHER CONDITIONS is amended by the addition of the following:

**Mitigation:** It is a condition precedent to coverage that the Insured shall not willfully fail to comply with any Security Breach Notice Law that the Named Insured may be subject to, by reason of an Unauthorized Access or Potential Unauthorized Access.

**11.** The following Conditions and provisions of the policy shall also apply to the coverage afforded by this Endorsement.

Cancellation,
Representations,
Entire Agreement,
Other Insurance,
Changes,
Assignment of Interest,
Subrogation,
Assistance and Cooperation of the Insured,
False and Fraudulent Claims,
Premium and Audit,
Inspection
Action Against the Company,
Authorization, and
Service of Suit.

All other terms and conditions remain unchanged.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 70 of 103

MARKEL

POLICY NUMBER: MKLV4PSM001088

# EVANSTON INSURANCE COMPANY

## HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA) – CIVIL MONETARY PENALTY ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART — CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART — CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.** The policy is amended by the addition of the following:

**SUPPLEMENTARY PAYMENTS**

**A. HIPAA Civil Monetary Penalty Coverage:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as a Civil Monetary Penalty as a result of a HIPAA Civil Violation first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, arising out of any HIPAA Civil Violation committed or alleged to have been committed by the Insured or by any person for whose actions the Insured is legally responsible provided:

**1.** such HIPAA Civil Violation:

**a.** arises out of the conduct of the Insured's Professional Services; and

**b.** is committed or alleged to have been committed during the Policy Period or on or after the Retroactive Date as stated in the Declarations; and

**2.** prior to the effective date of this policy the Insured had no knowledge of such HIPAA Civil Violation or any fact, circumstance, situation or incident which may result in a HIPAA Civil Violation.

**Limits of Liability - HIPAA Civil Monetary Penalty**: The total liability of the Company for the combined total of Civil Monetary Penalties and Legal Expenses for each HIPAA Civil Violation first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated below as applicable to Each HIPAA Civil Violation. Subject to the foregoing, the total liability of the Company for the combined total of Civil Monetary Penalties and Legal Expenses for all HIPAA Civil Violations first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated below as applicable to All HIPAA Civil Violations.

**1.** $250,000 Each HIPAA Civil Violation

**2.** $250,000 All HIPAA Civil Violations

The Insured shall give the Company written notice as stated in the Declarations within ten (10) days of the Insured receiving a notice of HIPAA Civil Violation and in any event such written notice shall be provided prior to the Insured incurring any legal fees or legal expenses related to such matter.

The Company shall have the right and duty to defend and investigate any HIPAA Civil Violation to which coverage under this Coverage Part applies. The Company may make such investigation and settlement of any HIPAA Civil Violation as it deems expedient. Legal Expenses incurred in defending and investigating a HIPAA Civil Violation

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 71 of 103

shall be a part of and shall not be in addition to the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage. Such Legal Expenses shall reduce the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage and shall be applied against the Deductible. The Company shall have no obligation to pay any Civil Monetary Penalty or to defend or to continue to defend any HIPAA Civil Violation or to pay Legal Expenses for HIPAA Civil Violations after the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage have been exhausted.

Payments pursuant to this Section shall be in addition to the Limits of Liability stated in the Declarations.

**2.** Section Definitions is amended by the addition of the following:

**Civil Monetary Penalty** means a civil monetary penalty imposed by the Secretary of the United States Department of Health and Human Services, or his or her designee, under 42 U.S.C. §1320d-5 and 45 C.F.R. §160.404.

**Health Insurance Portability and Accountability Act ("HIPAA")** means the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191.

**HIPAA Civil Violation** means a notice received by the Insured for failure to comply with the HIPAA Standards for Privacy of Individually Identified Health Information (Privacy Rule) which protects the privacy of individual health information, including maintaining the confidentiality of information regarding medical services and limiting the release or use of such information in conformance with state or federal law, including any allegation that the Insured was negligent in hiring, training or supervising any Insured person who failed or is alleged to have failed to comply with the Privacy Rule.

**Legal Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any HIPAA Civil Violation for which coverage is afforded under this Coverage Part, including costs of investigation and costs of appeals; provided, however, Legal Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

**3.** Section The Exclusions is amended by the addition of the following exclusions:

With respect to Supplementary Payments, HIPAA Civil Monetary Penalty Coverage, such coverage does not apply to any HIPAA Civil Violation:

**1.** based upon, arising out of, or in any way involving:

**a.** any HIPAA Civil Violation or any claim, fact, circumstance, situation or incident which has or may result in a HIPAA Civil Violation that has been the subject of any notice given prior to the Policy Period under any other policy of insurance; or

**b.** any HIPAA Civil Violation, whenever occurring, which is logically or causally connected to another HIPAA Civil Violation by reason of any common fact, circumstance, situation, event or transaction that has been the subject of any notice given prior to the Policy Period under any other policy of insurance; or

**2.** based upon, arising out of, or in any way involving any litigation, demand, investigation, administrative or regulatory proceeding or other proceeding pending, or order, decree or judgment entered, against any Insured on or prior to the inception date of this policy, or the same or any substantially similar HIPAA Civil Violation or any fact, circumstance, situation or incident underlying or alleged therein.

**4.** Section Limits of Liability is amended by the addition of the following:

**Multiple Insureds, HIPAA Civil Violations and Protected Health Information Records Released:** The inclusion herein of more than one Insured in any HIPAA Civil Violation shall not operate to increase the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage. More than one HIPAA Civil Violation arising out of a single release of protected health information or a series of related releases of protected health information shall be considered a single HIPAA Civil Violation. All such HIPAA Civil Violations, whenever made, shall be treated as a single HIPAA Civil Violation. Such single HIPAA Civil Violation, whenever made, shall be deemed to be first made on the date on which the earliest HIPAA Civil Violation arising out of such release of protected health information is made.

All other terms and conditions remain unchanged.

MARKEL®

POLICY NUMBER: MKLV4PSM001088

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS G.1.

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE

In consideration of the premium paid, it is hereby understood and agreed that Section Definitions G.1. is deleted and replaced with the following:

1. Multiplied portions of damages in excess of actual damages, including trebling of damages;

All other terms and conditions remain unchanged.

POLICY NUMBER : MKLV4PSM001088

MARKEL®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MARKEL ADVANTAGE – GOOD SAMARITAN COVERAGE AND SUPPLEMENTARY PAYMENTS

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that:

**1.** Section INSURING AGREEMENT A. is amended by the addition of the following:

Any Claim by reason of an act, error or omission in rendering a Good Samaritan Act shall not be subject to any Deductible.

**2.** Section SUPPLEMENTARY PAYMENTS is added as follows:

**SUPPLEMENTARY PAYMENTS**

**A. Defense of License Coverage and Claims Made Clause:** The Company shall pay on behalf of the Insured reasonable and necessary Legal Fees and Legal Expenses incurred in the defense of the Insured in response to a Disciplinary Proceeding first initiated during the Policy Period;

Provided:

**1.** The act, error or omission in Professional Services giving rise to the Disciplinary Proceeding happens during the Policy Period or on or after 01/26/2023 and before the end of the Policy Period; and

**2.** Prior to the effective date of this policy the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Disciplinary Proceeding was likely;

Subject to:

**a.** A limit of liability of $5,000 for each Insured for each Disciplinary Proceeding; and

**b.** A policy aggregate limit of liability of $15,000 for all Insureds for all Disciplinary Proceedings covered herein.

The Insured shall give written notice to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company as soon as practicable of any Disciplinary Proceeding first initiated against the Insured during the Policy Period.

Payment pursuant to this Section SUPPLEMENTARY PAYMENTS A. shall be in addition to the Limits of Liability stated in the Declarations and shall not be subject to any Deductible.

**B. Trial Attendance Supplementary Payment:** The Company shall pay a per diem trial attendance allowance of $250 to any Insured who attends the trial, mediation or arbitration of a Claim; but only if;

**1.** The Claim is made against the Insured;

**2.** The Claim is covered by this policy; and

**3.** The Insured attends the trial, mediation or arbitration at the written request of the Company.

All other terms and conditions remain unchanged.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 74 of 103



Payment pursuant to this Section SUPPLEMENTARY PAYMENTS B. shall be in addition to the Limits of Liability stated in the Declarations and shall not be subject to any Deductible.

**C. Subpoena/Deposition Request Assistance:** In the event that during the Policy Period:

1. The Insured first receives a subpoena, a written request for the Insured's records or files or notice of deposition relative to an act, error or omission in Professional Services rendered or that should have been rendered by the Insured; and
2. The Insured reports the receipt of such subpoena or request or notice in writing to notice to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, within thirty (30) days of such receipt and prior to a Claim being first made against the Insured arising out of such Professional Personal Injury;

Then the Company shall pay on behalf of the Insured, up to $5,000 per Policy Period for reasonable and necessary Legal Fees and Legal Expenses incurred for engaging the services of legal counsel selected by the Company to assist the Insured in responding to such subpoena or request or notice of deposition;

Payment pursuant to this Section SUPPLEMENTARY PAYMENTS C. shall be in addition to the Limits of Liability stated in the Declarations and shall not be subject to any Deductible.

No payment pursuant to this Section shall be made for the Insured's payment of or obligation to pay any taxes; criminal or civil fines, penalties or sanctions; registration or licensing fees; costs required to comply with non-monetary conditions imposed upon any Insured as a condition of licensure; any monetary judgment, award or settlement of any kind; or any Legal Fees and Legal Expenses incurred by the Insured in a proceeding associated with the foregoing.

**3.** Section DEFINITIONS H., Professional Personal Injury, is amended by the addition of the following:

**4.** An act, error or omission in rendering a Good Samaritan Act.

**4.** Section DEFINITIONS is amended by the addition of the following:

**a. Disciplinary Proceeding** means the Insured's receipt of notice of:

**i.** Any state or federal regulatory or disciplinary action, inquiry or review involving the Insured's professional licensure, with the purpose of adversely affecting the Insured's license;

**ii.** Any professional disciplinary action, inquiry, or review taken against the Insured by any health care organization which affects the Insured's professional privileges or membership with such organization;

However, Disciplinary Proceeding shall not include:

**(a)** Any dispute involving timely completion of medical records;

**(b)** Any application for initial placement on a medical staff;

**(c)** Any criminal proceeding;

**(d)** Any dispute involving allegations of fraud or willful non-compliance with any regulations or procedures or Medicare, Medicaid or any similar federal or state program; or

**(e)** Any appeal of a Disciplinary Proceeding concluded against the Insured.

**b. Good Samaritan Act** means emergency health care, emergency medical care, or emergency treatment provided to a patient without compensation or expectation of compensation at the scene of any emergency.

**c. Legal Fees and Legal Expenses** means attorney's fees charged by legal counsel selected by the Company, and expert witness fees, and related legal and/or associated investigation costs and expenses incurred by the Insured with the written consent of the Company. This does not include reimbursement for the Insured's salary or loss of other billing or income. The Company shall have the final decision as to the reasonableness of the Legal Fees and Legal Expenses and as to the appeal any legal proceedings or Disciplinary Proceedings brought against the Insured.

**5.** Section LIMITS OF LIABILITY D., Deductible, is amended by the addition of the following:

Any Claim by reason of an act, error or omission in rendering a Good Samaritan Act shall not be subject to any Deductible.

All other terms and conditions remain unchanged.

POLICY NUMBER : MKLV4PSM001088

MARKEL®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SEXUAL ACTS LIABILITY SCHEDULED DEDUCTIBLE AND RETROACTIVE DATE

This endorsement modifies insurance provided under the following but only if such Coverage Part is purchased and attached to this policy:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

**SCHEDULE**

| | |
|---|---|
| Deductible: | $2,500 Each Claim |
| Retroactive Date: | 01/26/2023 |

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

I. **SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART** is amended as follows:

Section INSURING AGREEMENT is amended by the addition of the following:

1. **Sexual Acts Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Schedule of this endorsement, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS A., Claim Reporting Provision, for Sexual Injury arising out of any Sexual Act perpetrated or alleged to have been perpetrated by the Insured natural person or by any person for whose actions the Insured is legally responsible, or for allegations that the Insured was negligent in hiring, training or supervising any Insured natural person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury provided:

   1. Such Sexual Act is perpetrated or alleged to have been perpetrated during the Policy Period or on or after the Retroactive Date stated in the Schedule of this endorsement and before the end of the Policy Period; and

   2. Prior to the effective date of this policy the Insured had no knowledge of such Sexual Act or any fact, circumstance, situation or incident involving such Sexual Act which may lead a reasonable person in the Insured's position to conclude that a Claim was likely.

2. Section DEFINITIONS is amended by the addition of the following:

   **Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services.

   **Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

All other terms and conditions remain unchanged.

**3.** Section THE EXCLUSIONS L. is deleted.

**4.** Section THE EXCLUSIONS is amended by the addition of the following exclusions:

This Coverage Part does not apply to:

**(i)** Any Insured who perpetrates or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury; provided, however, the Company shall defend such Insured and pay Claim Expenses on their behalf unless it is established in fact that such Insured perpetrated such Sexual Act;

**(ii)** Any manager, supervisor, partner, officer, director or trustee who gains knowledge of any actual or alleged Sexual Act and fails to take reasonable care to prevent a future Sexual Act;

**(iii)** Any Claim based upon or arising out of any Sexual Act which is perpetrated or alleged to have been perpetrated by an Insured who previously perpetrated or is alleged to have previously perpetrated a Sexual Act, and after a manager, supervisor, partner, officer, director or trustee has gained knowledge of the previously perpetrated or previously alleged to have been perpetrated Sexual Act; or

**(iv)** Any Claim based upon or arising out of Sexual Injury to any Employee of the Insured.

**5.** Section LIMITS OF LIABILITY is amended by the addition of the following:

**F. Limit of Liability - Sexual Acts Liability Coverage**: The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims under Sexual Liability Coverage insured herein is limited to:

**1.** $100,000 All Claims Made by Each Claimant

**2.** $300,000 All Claims under Sexual Acts Liability Coverage

**G. Multiple Sexual Acts:** Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

**6.** Section LIMITS OF LIABILITY B. is amended by the addition of the following:

Subject to Section LIMITS OF LIABILITY F., Limits of Liability - Sexual Acts Liability Coverage, the total liability of the Company under this endorsement for all Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured natural person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury shall be part of and not in addition to the Specified Medical Professions Professional Liability Insurance Coverage Part Aggregate Limit of Liability stated in the Declarations, arising out of all Claims first made against the Insured during the Policy Period and the Extend Reporting Period, if exercised.

**II. SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART** is amended as follows:

**1.** Section DEFINITIONS is amended by the addition of the following:

**Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services.

**Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

**2.** Section THE EXCLUSIONS A. is amended by the addition of the following exclusions:

**A.** With respect to all Coverages, this Coverage Part does not apply to any Claim:

**1.** Based upon or arising out of:

**(i)** Any Sexual Injury; or

**(ii)** Any allegations that the Insured was negligent in hiring, training or supervising any person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury.

All other terms and conditions remain unchanged.

POLICY NUMBER: MKLV4PSM001088

MARKEL®

EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES – MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that this policy is amended as follows:

Paragraph **E.** Multiple Insureds, Claims and Claimants in Section Limits Of Liability is replaced by the following:

**E.** **Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in the Declarations. More than one Claim arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single Claim. All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such act, error or omission or series of related acts, errors or omissions are made, or with regard to written notice given to and accepted by the Company pursuant to Section CLAIMS B., Discovery Clause, on the date within the Policy Period on which such written notice of potential Claim is first received by the Company. The only limits of liability applicable to the Claim are the limits of liability in force for the Policy Period during which the initial Claim was first made.

All other terms and conditions remain unchanged.

POLICY NUMBER: MKLV4PSM001088

MARKEL

EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES – MULTIPLE INSUREDS, CLAIMS AND OCCURRENCES

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that this policy is amended as follows:

**A.** Paragraph **G.** Multiple Insureds, Claims and Occurrences in Section Limits Of Liability in the **SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE** is replaced by the following:

**G. Multiple Insureds, Claims and Occurrences:** Under Coverage A. the inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability applicable to Coverage A. stated in the Declarations. More than one Claim arising out of a single Occurrence or a series of related Occurrences shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Occurrence or series of related Occurrences is made or with regard to written notice given to and accepted by the Company pursuant to Section CLAIMS B., Discovery Clause, on the date within the Policy Period on which such written notice of potential Claim is first received by the Company. The only limits of liability applicable to the Claim are the limits of liability in force for the Policy Period during which the initial Claim was first made.

**B.** Paragraph **G.** Multiple Insureds, Claims and Occurrences in Section Limits Of Liability in the **SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE** is replaced by the following:

**G. Multiple Insureds, Claims and Occurrences:** Under Coverage A. the inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability applicable to Coverage A. stated in the Declarations. Bodily Injury or Property Damage sustained by one or more persons arising out of the same Occurrence or series of related Occurrences shall be considered a single Occurrence. All such Damages shall be treated as a single Occurrence. The only limits of liability applicable to all Damages arising out of the Occurrence or series of related Occurrences are the limits of liability in force for the Policy Period during which the initial Occurrence happened.

All other terms and conditions remain unchanged.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 79 of 103

MARKEL®

POLICY NUMBER: MKLV4PSM001088

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE

In consideration of the premium paid, it is understood and agreed that the policy is amended as follows:

**A.** The SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART is amended as follows:

**1.** Section DEFINITIONS is amended by the addition of the following:

**Unmanned Aircraft** means an aircraft that is not designed, manufactured, or modified after manufacture, to be controlled directly by a person from within or on the aircraft.

**2.** Section THE EXCLUSIONS is amended by the addition of the following exclusion:

Any Claim based upon, arising out of or in any way involving the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft. Solely for purposes of this exclusion, “use” includes operation of or exercise of any control over an Unmanned Aircraft; and the Insured’s authorization, direction or acquiescence in the operation or control of Unmanned Aircraft by any person or entity; and loading or unloading of any such Unmanned Aircraft. This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, involving the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft.

**B.** The SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART is amended as follows:

**1.** Section DEFINITIONS B., Aircraft Products, is deleted and replaced as follows:

**B. Aircraft Products** means any aircraft whether or not heavier than air, including manned and Unmanned Aircraft, spacecraft and missiles, and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of Aircraft Products.

**2.** Section DEFINITIONS is amended by the addition of the following:

**Unmanned Aircraft** means an aircraft that is not designed, manufactured, or modified after manufacture, to be controlled directly by a person from within or on the aircraft.

**3.** Section THE EXCLUSIONS A. is amended by the addition of the following:

Based upon, arising out of or in any way involving Bodily Injury, Property Damage or Personal Injury and Advertising Injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft. Solely for purposes of this exclusion, “use” includes operation of or exercise of any control over an Unmanned Aircraft; and the Insured’s authorization, direction or acquiescence in the operation or control

of Unmanned Aircraft by any person or entity; and loading or unloading of any such Unmanned Aircraft. This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, if the Occurrence which caused the Bodily Injury or Property Damage or the offense which caused the Personal Injury and Advertising Injury involved the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft.

**4.** Section THE EXCLUSIONS B.6. is deleted and replaced as follows:

**6.** Based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

**a.** Any Auto, aircraft other than an Unmanned Aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

**b.** Any other Auto, aircraft other than an Unmanned Aircraft or watercraft operated by any person in the course of their employment or activities on behalf of the Named Insured;

This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, if the Occurrence which caused the Bodily Injury or Property Damage involved the ownership, maintenance, use or entrustment to others of any aircraft other than Unmanned Aircraft, Auto or watercraft that is owned or operated by or rented or loaned to any Insured;

provided, however, this exclusion shall not apply to:

**(1)** The parking of an Auto on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Auto is not owned by or rented or loaned to any Insured;

**(2)** A watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

**(3)** A watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

All other terms and conditions remain unchanged.

Case 7:25-cv-00370 Document 24 Filed 03/16/26 in TXSD Page 81 of 103

MARKEL®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

# EXHIBIT B

Filed: 7/22/2025 11:53 AM
Orlando Velasquez, District Clerk
Starr County, Texas

Maria Guerra

**CAUSE NO. DC-24-109**

| | | |
|---|---|---|
| **EVA FALCON GARZA**<br>*Plaintiff,* | § § § | **IN THE DISTRICT COURT** |
| **V.** | § § | **381st JUDICIAL DISTRICT** |
| **AVIEL SAENZ, SAN JUANITA LOPEZ, JOSE O. LEAL, JR., LA CASA DE SUSY ADULT DAY CARE, L.L.C, RELIABLE D.M.E., LLC, RIO GRANDE STARVIEW, LLC AND FIVE STAR SUITES LLC**<br>*Defendants.* | § § § § § § § | **STARR COUNTY, TEXAS** |

**PLAINTIFF'S THIRD AMENDED ORIGINAL PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, EVA FALCON GARZA,** ("Plaintiff"), complaining of and about **AVIEL SAENZ, SAN JUANITA LOPEZ, JOSE O. LEAL, JR., AND LA CASA DE SUSY ADULT DAY CARE, L.L.C., RELIABLE D.M.E., LLC, RIO GRANDE STARVIEW, LLC, AND FIVE STAR SUTIES LLC,** ("Defendants"), and for such cause of action would show unto the Court the following:

**I.**
**DISCOVERY CONTROL PLAN**

Discovery should be conducted under a level 3 discovery control plan in accordance with the TEXAS RULES OF CIVIL PROCEDURE, Rule 190.4.

**II.**
**JURISDICTION AND VENUE**

Jurisdiction is appropriate in this Court in that this is a lawsuit seeking damages in excess of the minimum jurisdictional limits of the district courts of the State of Texas, and this court has personal jurisdiction over Defendant. Plaintiff seeks damages in excess of the minimum jurisdictional limits of this court.

Venue is proper in Starr County, Texas because the incident made the basis of this lawsuit occurred in said county and thus, all or a substantial part of the events or omissions giving rise to the claim occurred in Starr County, Texas. See TEXAS CIVIL PRACTICE AND REMEDIES CODE § 15.002 (1).

## III.
## PARTIES

Plaintiff, **EVA FALCON GARZA** is an individual that resides in Starr County, Texas.

Defendant **AVIEL SAENZ** is an individual residing in Starr County, Texas. Plaintiff has appeared and has answered this lawsuit; no additional citation is required at this time.

Defendant, **SAN JUANITA LOPEZ** is an individual that resides in Starr County, Texas who serves as a registered agent, member, manager, and/or controlling person for multiple business entities involved in the lawsuit. Upon information and belief, Defendant Lopez exercises control and management authority over the day-to-day operation of the business entities named herein. Service of process may be accomplished by serving San Juanita Lopez wherever she may be found.

Defendant, **JOSE O. LEAL, JR.**, is an individual that resides in Starr County, Texas who serves as a registered agent, member, manager, and/or controlling person for multiple business entities involved in the lawsuit. Upon information and belief, Defendant Leal exercises control and management authority over the day-to-day operation of the business entities named herein. Service of process may be accomplished by serving Jose O. Leal, Jr., wherever he may be found.

Defendant, **LA CASA DE SUSY ADULT DAY CARE, L.L.C.,** is a limited liability company that conducts business in Texas. Defendant has appeared and has answered this lawsuit; no additional citation is required at this time.

Defendant **Reliable D.M.E., LLC** is a limited liability company that conducts business in Texas. The company's registered address is 5117 E US Highway 83 STE A, Rio Grande City, TX 78582. This entity owns and operates medical equipment supply services and owned the vehicle involved in the subject incident. Service of process may be accomplished by serving its registered agent, **JOSE O. LEAL, JR.**, wherever he may be found.

Defendant **RIO GRANDE STARVIEW, LLC** is a limited liability company that conducts business in Texas. The company's registered address is 5117 E US Highway 83 STE A, Rio Grande City, TX 78582. Service of process may be accomplished by serving its registered agent, **JOSE O. LEAL, JR.**, wherever he may be found.

Defendant **FIVE STAR SUITES LLC** is a limited liability company that conducts business in Texas. The company's registered address is 5117 E US Highway 83 STE A, Rio Grande City, TX 78582. Service of process may be accomplished by serving its registered agent, **JOSE O. LEAL, JR.**, wherever he may be found.

## IV.
## COMMON ENTERPRISE AND ALTER EGO ALLEGATIONS

Plaintiff alleges that all corporate Defendants operate as a common enterprise and/or are alter egos of one another based on the following facts:

1. Shared Address and Location: All corporate Defendants list the same registered address at 5117 E US Highway 83 STE A, Rio Grande City, TX 78582.

2. Common Management: San Juanita Lopez and Jose O Leal, Jr. serve as registered agents for multiple entities and exercise control over the operations of said entities.

3. Interrelated Operations: The entities share employees, resources, and operational control, including but not limited to the employees Aviel Saenz who was operating vehicles and conducting business for multiple entities and Jorge Valdez who was the supervisor of La Casa de Susy Adult Day Care, LLC, at the time of the incident.

4. Proximity of Operations: The incident location at 5105 S. Embassy Street is approximately one minute away from the registered business address, indicating integrated operations in the same geographic area.

5. The title owner of the real property, located at 5105 S. Embassy St., is Rio Grande Starview, LLC

6. Shared Resources: Upon information and belief, the entities share vehicles, equipment, personnel, and financial resources.

7. Lack of Corporate Formalities: Upon information and belief, the corporate entities have failed to maintain proper corporate formalities and have commingled assets, operations, and management decisions.

## V.
## BACKGROUND FACTS

This case concerns a preventable premises incident and is brought under and by virtue of the laws of the State of Texas to recover those damages which Plaintiff is justly entitled to receive as compensation for the damages arising due to the severe injuries of Plaintiff Eva Falcon Garza, which was proximately caused by the negligence and/or gross negligence of Defendants as alleged fully herein. The incident made the basis of this suit (hereinafter the "Subject Incident") occurred on October 31, 2023.

At the time of the incident, Plaintiff Eva Falcon Garza sustained serious and disabling injuries when the 2017 Ford Van driven by Defendant Aviel Saenz was parked on the fire lane and violently struck Plaintiff while reversing backwards on the property located at 5105 S. Embassy Street., Rio Grande City, Starr County, Texas.

Defendant Aviel Saenz was an employee and/or agent of Defendants, and his wrongful actions were within the scope of employment and/or agency relationship with said Defendants. The 2017 Ford Van in question was owned by Defendant, LA CASA DE SUSY ADULT DAY

CARE, L.L.C.

Plaintiff entered the premises at the invitation of Defendants for the mutual benefit of both parties. Plaintiff's incident, being knocked to the ground by the van in question, was proximately caused by the negligence of Defendants, their agents, servants and/or employees.




(Illustrated photos of the incident in question)

## V.
## AGENCY AND RESPONDEAT SUPERIOR

Whenever in Plaintiff's Third Amended Petition it is alleged that Defendants did any act, it is meant that Defendants or their employees, agents, officers, representatives, or servants did such act or failed to do such act, and at the time such act or omission occurred, it was with full knowledge, authorization or ratification of Defendants or done in the normal routine, course and scope of such

agency or employment.

Under the doctrine of *Respondeat Superior*, Defendants are liable to Plaintiff for the conduct or omissions of their employees, agents or servants.

**VI.**
**CAUSE OF ACTION**

**COUNT 1**
**NEGLIGENCE DEFENDANT AVIEL SAENZ**

Defendant Aviel Saenz was operating the aforementioned vehicle in a negligent and careless manner in the following respects which, among others, may be shown at the trial of this cause:

1. In failing to keep a proper lookout;
2. In failing to timely make application of his brakes;
3. In failing to timely swerve or otherwise maneuver the vehicle so as to avoid the incident made the basis of this suit;
4. In failing to operate the vehicle in a reasonable and prudent manner;
5. In failing to operate the vehicle in obedience to traffic laws and regulations; and
6. Failing to control his speed;
7. Violation of §552.008 and §545.401 of the Texas Transportation Code; and
8. In failing to exercise reasonable care for the safety of invitees on the premises.

**COUNT 2**
**NEGLIGENCE AGAINST CORPORATE DEFENDANTS**

Defendants LA CASA DE SUSY ADULT DAY CARE, L.L.C., RELIABLE D.M.E., LLC, RIO GRANDE STARVIEW LLC, FIVE STAR SUITES LLC, and LEACOURT STEEL LLC breached the duty owed to Plaintiff to exercise reasonable care by committing the following acts and/or omissions:

1. Negligently entrusting the 2017 Ford Van to Defendant Aviel Saenz.

2. Failing to train Defendant Aviel Saenz to safely reverse with precaution;

3. Failing to train Defendant Aviel Sanez to be aware of his surroundings;

4. Failing to train, supervise and implement safety policies for its drivers;

5. Failing to maintain safe premises and parking areas;

6. Failing to provide adequate marked crosswalks to guide invitees;

7. Failing to implement proper safety protocols for vehicle operations on the premises; and

8. All other acts and/or omissions that may be shown at the trial of this matter.

**COUNT 3**
**NEGLIGENCE AGAINST INDIVIDUAL DEFENDANTS LOPEZ AND LEAL**

Defendants San Juanita Lopez and Jose O Leal, Jr., in their individual capacities as managers, controlling persons, and/or agents of the corporate entities, breached their duty of care to Plaintiff by:

1. Failing to implement adequate safety policies and procedures across all business operations under their control;

2. Negligently supervising employees and agents, including Aviel Saenz;

3. Failing to ensure proper training of drivers and employees;

4. Negligently managing the premises and operations in a manner that created unreasonable risks to invitees;

5. Failing to exercise reasonable care in the oversight of multiple business operations;

6. All other acts and/or omissions that may be shown at the trial of this matter.

**COUNT 4**
**PREMISES LIABILITY**

Defendants knew or should have known of the reasonably dangerous conditions created by:

1. Not using marked crosswalks to guide invitees to cross the parking lot;

2. Failing to maintain safe vehicle operation areas;

3. Allowing vehicles to park in fire lanes;

4. Failing to provide adequate lighting and visibility for pedestrian safety; and

5. Creating and maintaining dangerous conditions on the premises.

**COUNT 5**
**VIOLATIONS OF TEXAS ACCESSIBILITY STANDARDS**

This incident resulted from the negligence and/or strict liability of Defendants in violation of the Texas Accessibility Standards, including:

1. Failure to comply with Section 206 regarding continuous accessible paths from parking to building entrance;

2. Failure to comply with Section 562 regarding accessible parking spaces on shortest accessible route to entrance;

3. Access aisles connecting to accessible routes;

4. Failure to comply with Chapter 4 (Walking Surfaces), Section 403.1 regarding General Walking Surfaces;

5. Failure to have policies and procedures in place regarding accessible walking routes and unreasonable risks of harm to guests.

**COUNT 6**
**PIERCING CORPORATE VEIL/ALTER EGO LIABILITY**

In the alternative, Plaintiff seeks to hold all corporate Defendants jointly and severally liable based on the doctrine of piercing the corporate veil and/or alter ego liability due to:

1. Unity of interest and ownership between the corporate entities;

2. Failure to maintain corporate formalities;

3. Commingling of assets and operations;

4. Shared management, employees, and resources;

5. Use of corporate entities to perpetrate fraud or injustice;

6. Inadequate capitalization relative to business operations;

7. Common enterprise operations under unified control.

## VII.
## CONDITIONS PRECEDENT

All conditions precedent to Plaintiff's claims for relief have been performed or have occurred. Any required notices have been provided, and all administrative remedies, if any, have been exhausted or are not required prior to filing this action.

## VIII.
## DAMAGES

As a direct and proximate result of the occurrence made the basis of this lawsuit and the conduct of Defendants, Plaintiff has incurred and is seeking the following damages:

1. Reasonable expenses of necessary medical care incurred in the past;

2. Reasonable expenses of necessary medical care that, in reasonable probability, Plaintiff will incur in the future;

3. Physical pain and mental anguish sustained in the past;

4. Physical pain and mental anguish that. in reasonable probability, Plaintiff will sustain in the future;

5. Physical impairment sustained in the past;

6. Physical impairment that, in reasonable probability, Plaintiff will sustain in the future;

7. Physical disfigurement sustained in the past;

8. Physical disfigurement that, in reasonable probability, Plaintiff will sustain in the future;

9. Loss of enjoyment of life in the past;

10. Loss of enjoyment of life in the future;

11. Inconvenience of life in the past;

12. Inconvenience of life in the future;

13. Statutory damages of at least $300 per violation pursuant to Texas Human Resources Code§ 121.004(b).

## IX. RANGE OF DAMAGES

In accordance with TEXAS RULE OF CIVIL PROCEDURE 47(c). Plaintiff seeks monetary relief over $1,000,000.00 but no more than $10,000,000.00. However, Plaintiff reserves the right to file a trial amendment or amended pleading should subsequent evidence show this figure to be either too high or too low.

## X. GROSS NEGLIGENCE AND EXEMPLARY DAMAGES

Plaintiff would further show that the negligent acts and/or omissions of Defendants constitute an entire want of care as to indicate that such acts and/or omissions were the result of conscious indifference to the rights, safety and welfare of others, including Plaintiff, and thus amount to gross negligence. The acts and/or omissions of Defendants, when viewed objectively from their standpoint at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. Thus, Defendants are liable for gross negligence and exemplary damages.

## XI. JURY DEMAND

Plaintiff demands a jury trial in accordance with Rule 216 of the Texas Rules of Civil Procedure and tenders the appropriate fee.

## XII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, that this cause be set down for trial before a jury, and that Plaintiff recover judgment of and from Defendants, jointly and severally, for the following:

1. Judgment against Defendants for actual and special damages suffered by Plaintiff in excess of the minimum jurisdictional limits of this court;
2. Statutory damages of at least $300 per violation pursuant to Texas Human Resources Code§ 121.004(b);
3. Exemplary and punitive damages;
4. Costs of suit;
5. Pre-judgment and post-judgment interest at the highest legal rate as provided by law;
6. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**LAW FIRM OF RICARDO A. GARCIA, PLLC**

By: ______________________________

Ricardo A. Garcia
State Bar No. 07643200
Ricardo J. Garcia
State Bar No. 24133245
820 S. Main
McAllen, Texas 78501
Telephone No.: (956) 630-2882
Telecopier No.: (956) 630-5393
E-mail: service@go-lawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing document was electronically served in accordance with Rules 21 and 21a of the TEXAS RULES OF CIVIL PROCEDURE on this 22nd day of July 2025.

Scott A. Seelhoff
**UPTON, MICKITS, & HEYMANN, L.L.P.**
820 N. Carancahua, Suite 450
Corpus Christi, Texas 78401
Email: sseelhoff@umhlaw.com
**ATTORNEY FOR DEFENDANT**

Ricardo A. Garcia

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lyssette Garnett on behalf of Ricardo Garcia
Bar No. 24133245
paralegal@go-lawfirm.com
Envelope ID: 103429957
Filing Code Description: Amended Filing
Filing Description: 3rd Amended Petition
Status as of 7/22/2025 3:09 PM CST

Associated Case Party: LA CASA DE SUSY ADULT DAY CARE, L.L.C.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Scott ASeelhoff | | sseelhoff@umhlaw.com | 7/22/2025 11:53:17 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ricardo A.Garcia | | service@go-lawfirm.com | 7/22/2025 11:53:17 AM | SENT |
| Scott A.Seelhoff | | sseelhoff@umhlaw.com | 7/22/2025 11:53:17 AM | SENT |
| Everth Perez | | eperez@tysonmendes.com | 7/22/2025 11:53:17 AM | SENT |
| Amanda N.James | | ajames@tysonmendes.com | 7/22/2025 11:53:17 AM | SENT |
| Reese Swincher | | rswincher@tysonmendes.com | 7/22/2025 11:53:17 AM | SENT |
| Jazmin Martinez | | jmartinez@tysonmendes.com | 7/22/2025 11:53:17 AM | SENT |
| Law Firm of Ricardo A. Garcia, PLLC. | | paralegal@go-lawfirm.com | 7/22/2025 11:53:17 AM | SENT |

# EXHIBIT C

LAW FIRM RICARDO A. GARCIA

Exhibit C

**July 15, 2025**

**<u>Via CMRRR: 9589 0710 5270 2240 1653 24</u>**
Christopher Chalk, JD
Senior Claims Specialist
Markel Service, Incorporated
P.O. Box 2009
Glen Allen, VA 23058-2009
Email: Christopher.Chalk@markel.com

**RE: STOWERS LETTER - DEMAND FOR POLICY LIMITS**

**Evanston Insured:** La Casa De Susy Adult Day Care DBA: Lindo Adult Day Care
**Claimant:** Eva Falcon Garza
**Claim No.:** SM416004
**Policy No.:** MKLV4PSM001088
**Date of Loss:** October 31, 2023

Dear Mr. Chalk:

This letter serves as formal notice of a claim against your insured and a demand under Texas Civil Practice and Remedies Code Sec.101.023 for payment of the full policy limits of $1,000,000 under the above-referenced general liability policy. In exchange for payment of the full policy limits, Ms. Garza will provide a full and complete release of all claims against your insured, including future claims, and said payment will satisfy any and all liens, subrogation claims, and other interests in this matter.

As you know, in determining whether a failure to settle within the policy limits is reasonable, three primary factors would be analyzed by a jury sitting in a Stowers claim: (1) the evidence of your client's negligence and/or gross negligence; (2) the damage facts demonstrate that the amount of a jury's verdict was likely to exceed the available policy coverage; and (3) the verdict history in the venue where the case will be tried. We believe these factors overwhelmingly suggest that your client's insurance carrier should tender the full amount of the policy limits in order to meet this *Stowers* obligation and settle this case. I respectfully ask that you immediately forward this demand to your client, and your client's personal attorneys as no other demand for this amount will be made after the expiration of this Stowers demand. Time is of the essence.

Your January 2, 2024 coverage disclaimer incorrectly denied coverage based on a mischaracterization of this incident as arising from "vehicle operation" when the evidence clearly establishes this claim arises from **premises liability** covered under the policy.

Exhibit C

## FACTUAL BACKGROUND

On October 31, 2023, Ms. Eva Falcon Garza, a disabled individual who wears glasses and suffers from arthritis affecting her mobility, was struck by your insured's van while walking on the premises of Lindo Adult Day Care. Ms. Garza has sustained significant injuries requiring ongoing medical treatment.

## WHY YOUR COVERAGE DENIAL IS INCORRECT

Your denial relies on Policy Exclusion B.6 (the "auto exclusion"), claiming this incident "arose out of" vehicle operation. This analysis is fundamentally flawed because **the proximate cause of this incident was premises liability, not vehicle operation.**

### I. TEXAS ACCESSIBILITY STANDARDS (TAS) AND REGULATORY VIOLATIONS

**Statutory Authority and Application:** The Texas Accessibility Standards (TAS) apply to all places of public accommodation under Texas Government Code Chapter 469 and Texas Human Resources Code Chapter 121. Adult day care facilities are specifically covered as places of public accommodation serving individuals with disabilities and the general public.

**TAS Violations:**

1. **Section 206.2.1 - Accessible Routes:** Complete absence of accessible pedestrian routes from the parking area to the building entrance, violating the requirement that "at least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site."
2. **Section 208.3.1 - Parking Spaces:** Failure to provide accessible parking spaces with proper access aisles connecting to accessible routes to building entrances.
3. **Section 206.4 - Site Arrival Points:** No accessible route from public transportation stops, accessible parking, or public streets to the accessible entrance.

**Additional Regulatory Violations:**

**Texas Health and Safety Code Chapter 247 (Adult Day Care Licensing):**

- Section 247.026 requires compliance with accessibility standards for licensed facilities
- Violation of safety requirements under Texas Administrative Code Title 40, Part 1, Chapter 97

**Americans with Disabilities Act (ADA) Violations:**

- 42 U.S.C. § 12182 - Discrimination in places of public accommodation
- 28 CFR § 36.304 - Duty to remove architectural barriers where readily achievable

Exhibit C

**Texas Human Resources Code Chapter 121:**

- Section 121.003 - Prohibition against discrimination in places of public accommodation
- Failure to provide equal access to disabled individuals

**Legal Significance:** These multiple statutory and regulatory violations created a dangerous condition that foreseeably resulted in pedestrian-vehicle conflicts. The vehicle contact was merely the mechanism of injury, not the legal cause.

## II. PREMISES DESIGN DEFECTS

**Inadequate Parking Design:** Your insured's own employee admitted in a recorded statement that he "had to back up to the building because there was not enough room to turn." This proves the parking area was improperly designed, forcing dangerous backing maneuvers.

**Prohibited Operations:** The van was backing up against a curb painted red, indicating "no parking." The premises design forces vehicles to operate in areas specifically designated as vehicle-prohibited zones.

## III. PREMISES SAFETY MANAGEMENT FAILURES

**No Warning Systems:** The van operated on the premises without backup warning signals, despite regular use for business operations transporting clients. The premises owner had a duty to ensure vehicles operating on their property had adequate safety equipment.

**Obscured Vehicle Visibility:** The van had white film covering all windows except the windshield, making it impossible for pedestrians to:

- See if the vehicle was occupied
- Make eye contact with the driver
- Determine if the vehicle was about to move
- Assess driver awareness of their presence

## IV. DISABILITY DISCRIMINATION

Ms. Garza's visual impairment and mobility limitations made the lack of accessible routes particularly dangerous. The premises failed to provide equal access, forcing disabled individuals into inherently dangerous areas where vehicles operate illegally.

Exhibit C

## LEGAL ANALYSIS: PREMISES LIABILITY vs. VEHICLE OPERATION

**Proximate Cause Analysis**

The **proximate cause** of this incident was the premises defects that created the dangerous condition:

1. **TAS violations** forcing pedestrians into vehicle traffic areas
2. **Inadequate parking design** requiring illegal backing maneuvers
3. **Premises safety failures** (no warning systems, obscured visibility)
4. **Failure to accommodate disabilities**

The vehicle backing was the **foreseeable result** of these premises defects, not an independent vehicle operation incident.

**Policy Coverage**

Under the policy's Coverage A (Bodily Injury and Property Damage Liability), coverage applies to bodily injury "caused by an Occurrence" that "arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations."

The Declarations specify "Adult Day Care Operations; all related premises and operations of the Insured." This incident clearly arises out of the **premises operations** and the dangerous conditions maintained thereon.

**Exclusion B.6 Does Not Apply**

Exclusion B.6 applies to injuries "arising out of ownership, maintenance, operation, use" of vehicles. Here, the injury arose out of **premises defects**, not vehicle operation. The dangerous backing maneuver was **necessitated by the premises design failures**.

## TRAP CONDITION CREATED

Your insured created a "trap condition" by:

- Forcing pedestrians to use vehicle traffic areas (TAS violation)
- Directing pedestrians toward an apparent "safe zone" (red curb/no parking)
- Allowing vehicles to operate illegally in that designated safe zone
- Failing to provide adequate warning systems or visibility
- Using vehicles with completely obscured windows

Ms. Garza reasonably expected the red curb area to be vehicle-free and had no way to anticipate or avoid the danger created by your insured's premises defects.

Exhibit C

## DAMAGES

Ms. Eva F. Garza sustained serious injuries after being struck by a van, including multiple fractures to both lower legs. She required extensive orthopedic surgeries, including the insertion of rods and the use of an external fixator. Her recovery has involved prolonged rehabilitation and the management of additional medical complications.

To date, Ms. Garza has incurred medical expenses totaling $727,803.84, of which $128,031.20 has already been paid. She continues to face substantial ongoing medical costs. In addition, she has suffered significant pain and suffering and has experienced lost income due to her inability to work. Given the severity and lasting impact of her injuries, her total damages are expected to exceed your policy limits.

## DEMAND

**This letter constitutes a FINAL Stowers demand for payment of the full policy limits of $1,000,000.** Texas recognizes a cause of action on the part of the liability insured against its liability carriers if they are damaged because of the carrier's negligence in refusing to settle the claims against its insured, within policy limits. *See G. A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved); *American Physicians Ins. Exchange vs. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994); *Texas Farmers Insurance Co. v. Soriano*, 881 S.W.2d 312 (Tex. 1994). In *Garcia*, the Texas Supreme Court set out a three-part test for determining whether the liability insurance carrier has breached its duty to settle under *Stowers*: (1) the claim against the insured is within the scope of coverage; (2) an unconditional demand is made within the policy limits in exchange for a release of the insured; and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Garcia*, 876 S.W.2d at 849 (Tex. 1994). *See also Soriano*, 881 S.W.2d at 314 (Tex. 1994).

In the case of *Bramlett v. The Medical Protective Company of Fort Wayne, Indiana*, 2013 WL 796725 (March 5, 2013), the Hon. Sidney Fitzwater, one of the most respected and conservative Republican federal judges in the country, addressed and rejected GEICO's current tactic and the common *Stowers* defendant insurer's plea that they should not be liable because they did not have sufficient knowledge of the case at the time the demand was made and held "There is no per se requirement that an insurer know all, or even most, of the facts of the case in order to have a *Stowers* duty. Indeed, early settlement is encouraged" citing *Garcia*, 876 S.W.2d at 851 n. 18 ("If the claimant makes such a settlement demand early in the negotiations, the insurer must either accept the demand or assume the risk that it will not be able to do so later. In cases presenting a real potential for an excess judgment, insurers have a strong incentive to accept.").

Therefore, we are willing to recommend to our client that she accept to settle for the amount of $1,000,000.00 to settle this case. **Plaintiff's demand is not only "reasonable," it is also "unconditional"**, thus assuming and accepting, without limitation to same, the following criteria:

1. This demand places no conditions on the acceptance of the settlement which are outside the power of the liability insurers to satisfy, *Insurance Corp. of American*

Exhibit C

*v. Webster*, 906 S.W.2d 77 (Tex. App. -- Houston [1st Dist.] 1995, writ denied); *Jones vs. Highway Ins. Underwriter*, 253 S.W.2d 1018 (Tex. Civ. App. -- Galveston 1952, writ ref'd n.r.e.);

2. In exchange for your insureds' tender of the amount demanded, Plaintiff will provide a full release or otherwise fully protect the insureds from further liability exposure from these claims, *Travel v. State Farm Mutual Automobile Ins. Co.*, 930 S.W.2d 862, 867 (Tex. App. --- Fort Worth 1996, writ granted); *Guin*, 704 S.W.2d at 817 (Tex. App. -- Texarkana 1985), *aff'd*, 723 S.W.2d 656 (Tex. 1987); and;

3. The claimant expressly agrees to satisfy all worker's compensation, hospital, and other legally-enforceable subrogation liens with the amount demanded (*i.e.*, the interests of any such subrogation lienholders are expressly included within the amount demanded and will be satisfied therefrom), *Trinity Universal Ins. Co. v. Bleeker*, 966 S.W.2d 489, 491 (Tex. 1998).

In exchange for payment of the full policy limits within seven (7) days of receipt of this letter, Ms. Garza agrees to provide a full and complete release of all claims against your insured, and said payment will satisfy any and all liens, subrogation claims, and other interests in this matter. **This is the final offer that will be extended to your insured. This offer terminates at 5:00 p.m. on July 26, 2025.**

Your insured faces substantial exposure for:

- Premises liability
- TAS violations
- Multiple statutory and regulatory violations
- Disability discrimination
- Negligent premises design and maintenance

**WARNING:** Should you fail to accept this demand within the seven (7) day period specified, we will immediately proceed to seek judgment against your insured. Given the jurisdiction where this case is pending and the egregious nature of the statutory violations and disability discrimination, **we will in all probability obtain a judgment in excess of $3,000,000**, creating catastrophic excess exposure for your insured that could have been avoided by accepting this reasonable settlement demand.

## REQUEST FOR RECONSIDERATION

We respectfully request that you immediately:

1. **Reverse your coverage denial** and acknowledge coverage exists under the premises liability provisions
2. **Accept this FINAL policy limits demand** to protect your insured from catastrophic excess exposure

Exhibit C

3. **Tender the $1,000,000 policy limits** within seven (7) days in exchange for a full release from Ms. Garza and satisfaction of all liens and subrogation interests

Your coverage denial was based on a fundamental mischaracterization of the incident. The evidence clearly establishes this as premises liability arising from multiple statutory violations, TAS violations, and dangerous premises conditions, not vehicle operation.

**TIME IS OF THE ESSENCE.** Please confirm receipt of this letter and advise of your position within 48 hours. Failure to timely respond will be deemed a rejection of this final settlement offer.

Very truly yours,

Ricardo A. Garcia
Attorney for Eva Falcon Garza

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via certified mail, return receipt requested, and email on this 15th day of July, 2025.

Ricardo A. Garcia